Debra L. RHYCE

v.

Dave **MARTIN**, et al.

No. Civ.A. 00–2623.

United States District Court, E.D. Louisiana.

April 9, 2001.

Karen Delcambre McCarthy, Lanny R. Zatzkis, Zatzkis, McCarthy & Associates, New Orleans, LA, for Plaintiff.

Henry D. H. Olinde, Jr., Scott Edward Mercer, Simoneaux, Carleton, Dunlap & Olinde, LLC, Baton Rouge, LA, for Defendants.

## ORDER AND REASONS

CLEMENT, District Judge.

Before the Court is Defendants' Motion to Dismiss, or in the Alternative, Motion for a More Definite Statement. For the following reasons, the Motion is GRANTED IN PART and DENIED IN PART.

## I. BACKGROUND[1]

For several years beginning in 1995, Plaintiff Debra L. Rhyce was employed as a firefighter with the Fire Suppression Unit of the St. Tammany Parish Fire Pro-

---

**1.** The following allegations are accepted as true and viewed in the light most favorable to Ms. Rhyce. FED. R. CIV. P. 12(b)(6); *Campbell* *v. City of San Antonio,* 43 F.3d 973, 975 (5th Cir.1995).

tection District No. 1 (the "Fire District"). Ms. Rhyce alleges that she enjoyed an exemplary career with the Fire Unit until she decided to further her education. The Fire District's alleged discriminatory reaction to this decision prompted the present action.

Ms. Rhyce was hired on April 1, 1995 as a firefighter in the Fire Suppression Unit of the Fire District. In the fall of 1996, while still working full-time for the Fire District, Ms. Rhyce enrolled in Delgado Community College to pursue an associate degree in Fire Science. The Delgado program is specially designed to permit firefighters to attend classes while on active duty, which can be difficult given that state law requires firefighters to work 24 hour shifts. *See* LA. R.S. 33:1963.

During the spring of 1998, again while still working full-time for the Fire District, Ms. Rhyce enrolled in classes outside of the Fire Science program. When her elective classes conflicted with her work schedule, Ms. Rhyce applied for vacation and/or Earned Annual Leave ("EAL") days. Concerned that the number of conflicting class days would outnumber her vacation and EAL days, Ms. Rhyce approached Deputy Chief Michael Jones in January 1999 and requested that she be allowed to take half days off from work instead of full days. Deputy Chief Jones informed her that she would be allowed to split her EAL time, but not her vacation time, into half days. This arrangement, however, did not afford her enough time to take all of her desired classes. After using up her authorized EAL half days, Ms. Rhyce requested to be allowed time off without pay to attend classes that conflicted with her work schedule. The request was denied. Ms. Rhyce then requested to use the EAL of her husband, also a Fire District employee. This request also was denied. "Having no other recourse, Plaintiff voluntarily resigned her position to complete her studies, effective September 5, 1999." Cplt. ¶ XV.

Not long after her resignation, in October 1999, Ms. Rhyce "discovered that other members of [her] crew, all males, were allowed to take half (½) days off during the same period that such a practice was denied to [her]. Not only were they allowed to take half days off, but they were allowed to do so on the dame day that Plaintiff was required to take a full day off. At least one male crew member was allowed to take half (½) days off to attend school in a curriculum unrelated to a fire science degree, and another was allowed to take half (½) days off related to the construction of a home. Further, the male firefighters were allowed to take half-day vacation days as well as half-day EAL days...." Cplt. ¶ XVII.

Armed with this information, Ms. Rhyce contacted Steve Farris, Chairman of the St. Tammany Parish Fire Board of Commissioners ("Fire Board"), who invited her to meet with him to discuss the allegations. At the meeting, Chairman Farris assured Ms. Rhyce that he would investigate the allegations and confer with the rest of the Fire Board. At a February 15, 2000 executive session, the Fire Board admitted to Ms. Rhyce that she had been the subject of discriminatory practices, apologized, and agreed that she would be reinstated to her position with no loss of seniority, with the opportunity to "buy back" vacation time for which she had been paid upon her resignation, and with the opportunity to take half days off in order to complete her education. This agreement was memorialized in a February 24, 2000 letter from Chairman Farris to the Chairman of the Fire District's Civil Service Board.

Her reinstatement did not go according to plan. Soon after the February 15 executive session, an unnamed former co-work-

er informed Ms. Rhyce that Harold Smith, Fire District Chief and President of the Firefighters Union, had publicly stated that he would not allow her to return to her previous post on the Fire District Central Station's Rescue Truck, where she had been able to capitalize on her certification as a paramedic, but would instead transfer her to a less desirable post at a less desirable station. The co-worker said that Chief Smith had stated that he wished to block Ms. Rhyce's attempt to regain her seniority and had made other, unspecified defamatory and discriminatory statements about her. On February 22, Ms. Rhyce contacted Chief Smith, who denied her request to be returned to her prior station. Ms. Rhyce believes that further defamatory statements were made at a Captain's meeting several days later. Additionally, Ms. Rhyce received a threatening phone call on February 20, during which the caller warned that her life was in danger if she returned to the fire department.

On March 1, 2000, Ms. Rhyce informed Fire Chief Milton Kennedy that she could not return to the Fire District because she felt that the District had violated the terms of her reinstatement agreement and because she feared for her life. In Ms. Rhyce's opinion, Chief Kennedy was unsympathetic, acknowledging Chief Smith's animus but offering only to reprimand him verbally and suggesting that she accept the transfer to another crew. Chief Kennedy also told Ms. Rhyce that she would not be allowed to take half-days of EAL time. Ms. Rhyce did not return to work at the Fire District.

## II. *LAW AND ANALYSIS*

On September 1, 2000, Ms. Rhyce filed a Complaint against the Fire District and nine people associated with the Fire District in their individual and official capacities. These defendants include Deputy Chief Jones, Chairman Farris, Chief Kennedy, and Chief Smith, as well as former Chief Albert Lee and Fire Commissioners Dave Martin, Darryl Warner, Charles Branton, and John Autry. Ms. Rhyce alleges violations of federal and state anti-discrimination and civil rights laws, breach of contract, intentional infliction of emotional distress, defamation, conspiracy, and misrepresentation. Defendants now move to dismiss almost all of the claims, or alternatively with respect to some claims, for a more definite statement.

In determining whether the Court should grant a motion to dismiss pursuant to Rule 12(b)(6), the Court must "accept all well-pleaded facts as true, and ... view them in the light most favorable to the plaintiff." *Capital Parks, Inc. v. Southeastern Adver., & Sales Sys., Inc.*, 30 F.3d 627, 629 (5th Cir.1994). Dismissal is justified "only if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations." *Id.* (citation omitted). Conclusory allegations or legal conclusions appearing as factual conclusions are insufficient to prevent dismissal for failure to state a claim. *See Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993).

### A. *Federal Anti-discrimination and Civil Rights Claims*

In Count One, Ms. Rhyce brings claims under 42 U.S.C. § 1981 *et seq.*, including §§ 1983 and 1986, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 12101 *et seq.*, "insofar as Defendants discriminated against [her] with respect to the terms, conditions or privileges of her employment because of her sex and gender, resulting in her resignation and her inability to return to her station and prior post...."

### 1. *Title VII Claims*

Ms. Rhyce alleges that Defendants violated Title VII, 42 U.S.C. § 2000e–2, which prohibits an employer from discriminating against any individual with respect to his or her compensation, terms, conditions, or privileges of employment "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). In order to assert a claim under Title VII, Ms. Rhyce must assert that (1) she belongs to a protected group, *i.e.*, women; (2) that she was qualified for her position; (3) that she suffered an adverse employment action; and (4) that the Fire District sought to replace her with a similarly qualified man or that others similarly situated were more favorably treated. *See Rutherford v. Harris County*, 197 F.3d 173, 179 & 183–84 (5th Cir. 1999).

To satisfy the third element of this test, Ms. Rhyce alleges that she was constructively discharged in September of 1999 when she was not allowed time off to complete her education and again in February and March of 2000 when the Fire District announced its intention to assign her to a less desirable post upon reinstatement and when she received threats on her life. Ms. Rhyce's constructive discharge claim requires her to allege that the Fire District made her working conditions so intolerable that a reasonable employee would feel compelled to resign. *See Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir.2000) (quoting *Barrow v. New Orleans Steamship Ass'n*, 10 F.3d 292, 297 (5th Cir.1994)). Defendants argue that Ms. Rhyce has failed to meet her burden because (1) "[s]imply refusing to allow an employee to take half days off is not so intolerable, from an objective standpoint, as to force a reasonable employee to resign . . . ,"[2] especially in light of state law which requires 24 hour shifts; (2) her reinstatement to a less desirable position did not constitute an adverse employment action; and (3) threats cannot give rise to constructive discharge.

The Court disagrees with Defendants. It is possible that Ms. Rhyce's reassignment away from Central Station's Rescue Truck could be considered a demotion or entail a reduction in job responsibilities that would support a constructive discharge claim. *See Barrow*, 10 F.3d at 297 (listing factors to consider in assessing a constructive discharge claim). In light of the other facts alleged, it also is possible that the Fire District's refusal to accommodate Ms. Rhyce's educational needs could have made her job intolerable and that the threats on her life could have convinced her not to return to a job that, by its very nature, can be life-threatening.[3] Thus, Ms. Rhyce's Title VII claims survive 12(b)(6) scrutiny to this extent.[4]

---

**2.** Def.s' Mem. in Supp. pp. 4–5.

**3.** Contrary to Defendants' implied suggestion, *Ward v. Bechtel*, 102 F.3d 199 (5th Cir.1997), does not hold that workplace threats can never give rise to a constructive discharge claim.

**4.** Whether Ms. Rhyce's claims will survive Rule 56 scrutiny or the scrutiny of a jury is another question. As Defendants point out, the loss of job responsibilities does not necessarily compel a finding of constructive discharge. For example, in *Jett v. Dallas Independent School District*, 798 F.2d 748 (5th Cir.1986), *aff'd in part, remanded in part on other grounds*, 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989), the Fifth Circuit found that the plaintiff's "loss of coaching responsibilities was not so intolerable that a reasonable person would have felt compelled to resign." *Id.* at 755. "Although a demotion or transfer in some instances may constitute a constructive discharge," the court agreed with the defendants that the evidence was "insufficient . . . to support the jury's finding that Jett was constructively terminated from his employment. . . ." *Id.* at 754–55. At this point in the instant case, with no evidence to

■ Alternatively, Defendants argue that Ms. Rhyce's claims can be asserted only against the Fire District, not against the individual defendants. Defendants cite *Grant v. Lone Star Co.*, 21 F.3d 649 (5th Cir.), *cert. denied*, 513 U.S. 1015, 115 S.Ct. 574, 130 L.Ed.2d 491 (1994), for the proposition that Title VII does not permit the imposition of liability upon individuals. Ms. Rhyce points out, however, that the Fifth Circuit has stated that "immediate supervisors are Employers [within the meaning of Title VII] when delegated the employer's traditional rights, such as hiring and firing." *Garcia v. Elf Atochem N. Am.*, 28 F.3d 446, 451 (5th Cir.1994) (internal emphasis omitted) (quoting *Quijano v. University Fed. Credit Union*, 617 F.2d 129, 131 (5th Cir.1980)). *See also Grant*, 21 F.3d at 653 ("Title VII does not permit the imposition of liability upon individuals unless they meet Title VII's definition of 'employer' "). Because the Fire Board members had the authority to hire and fire, Ms. Rhyce argues that the individual defendants come within the purview of Title VII.

The Court finds Ms. Rhyce's argument precluded by *Huckabay v. Moore*, 142 F.3d 233 (5th Cir.1998). In that case, William Huckabay, a white employee of a Texas county government, sued the county's commissioner, Edward Moore, in his individual and official capacities under Title VII for instituting racist employment practices in general and for discriminating against him in particular. In affirming the district court's grant of summary judgment in favor of Moore on the Title VII claim against him as an individual, the Fifth Circuit wrote:

A supervisor is considered an "employer" under title VII if he wields the employer's traditional rights, such as hiring and firing. And a county commissioner such as Moore, who possesses almost total executive authority within his precinct as well as legislative authority as a member of the commissioners court, certainly wields sufficient authority to be considered an employer.
This power is necessarily exercised, however, by a person who acts as an agent of the corporate or municipal body he represents. Because the wrongful acts are performed in his official capacity, any recovery against that person must be against him in that capacity, not individually. Further, if Moore acted only in his individual capacity, he did not act as an "employer" and would not be liable under title VII to the extent that he acted individually. Thus, a public official cannot be held liable in his individual capacity for backpay damages under title VII.

*Id.* at 241 (citations omitted). The court further held that Moore could not be held personally liable for compensatory or punitive damages. *Id.*

In addition, in *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258 (1999), the Fifth Circuit affirmed this Court's dismissal of plaintiff's Title VII claims against her supervisor in both his individual and official capacities.[5] As the Fifth Circuit noted, this Court "reasoned that it would be redundant for [a plaintiff] to sue both [her supervisor] in his official capacity and [her employer], because [the employer] would bear responsibility for the liability of either party through Title VII's incorporation of the principal of vicarious liabili-

---

place her claims in richer context, the Court is not prepared to determine that Ms. Rhyce cannot prove constructive discharge under the facts she has alleged.

5. *See Indest v. Freeman Decorating, Inc.*, 1995 WL 366484,*3 (E.D. La. June 20, 1995).

ty." 164 F.3d at 262. In affirming, Judge Jones wrote, "We agree that . . . a party may not maintain a suit against both an employer and its agent under Title VII." *Id.*[6] *See also Harbin v. CII Carbon, L.L.C.*, 1999 WL 350161,*2–3 (E.D.La. May 28, 1999) (Clement, J.).

Accordingly, the Court DISMISSES Ms. Rhyce's Title VII claims against the Fire District personnel in their individual and official capacities.

### 2. *42 U.S.C. § 1981 Claims*

■ Citing *Jett v. Dallas Independent School District*, 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989), Defendants argue that Ms. Rhyce's § 1981 claims must be dismissed because § 1983 provides the exclusive means by which a private plaintiff can pursue a federal damages remedy against state actors for violation of rights guaranteed by § 1981. Citing *Federation of African American Contractors v. City of Oakland*, 96 F.3d 1204 (9th Cir.1996), Ms. Rhyce argues that the Civil Rights Act of 1991 overruled *Jett* and created an implied cause of action against state actors under § 1981.

*Federation*'s holding, however, has not been embraced by other courts of appeal. For example, in *Butts v. County of Volusia*, 222 F.3d 891 (2000), the Eleventh Circuit expressly disagreed with *Federation*'s rationale, concluded that *Jett* was still good law, and affirmed the district court's determination that § 1981 did not provide the plaintiff with a cause of action against state actors for racial discrimination. In a pre-*Federation* opinion, the Fourth Circuit came to the same conclusion. *See Dennis v. County of Fairfax*, 55 F.3d 151, 156 n. 1 (4th Cir.1995). And, most importantly for this Court, the Fifth

Circuit just recently expressed its opinion regarding the continuing validity of *Jett:* "Because Congress neither expressed its intent to overrule *Jett,* nor explicitly created a remedy against state actors in addition to § 1983, we are not willing to deviate from the Supreme Court's analysis of § 1981 in *Jett." Oden v. Oktibbeha County, Miss.*, 246 F.3d 458 (5th Cir.2001).

■ Even if the Court accepted the *Federation* holding, however, it would not aid Ms. Rhyce's cause because the great weight of authority indicates that § 1981 applies only to instances of racial discrimination and will not support a claim for gender discrimination. In pertinent part, § 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . and to the full and equal benefit of all laws . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Congress intended § 1981 "to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics." *Saint Francis College v. Al–Khazraji*, 481 U.S. 604, 613, 107 S.Ct. 2022, 2028, 95 L.Ed.2d 582 (1987). Numerous courts have held that gender discrimination does not fall within the scope of § 1981. *See, e.g., Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684, 693 (2d Cir.1998) (claim of gender discrimination "plainly outside the scope of § 1981, which deals with discrimination on the basis of race or alienage"); *Jones v. Bechtel*, 788 F.2d 571, 574 (9th Cir.1986) ("It is clear that section 1981 does not provide a cause of action based on sex discrimination."); *Bobo v. ITT, Cont'l*

---

**6.** Although two panel judges in *Indest* concurred in the judgment only, Judge Wiener appears to have taken no issue with this aspect of Judge Jones' opinion. *See* Judge Wiener's special concurrence, 168 F.3d 795 (5th Cir.1999).

*Baking Co.,* 662 F.2d 340, 342 (5th Cir. 1981) ("Although § 1981 strikes at many forms of racial discrimination, no court has held that allegations of gender based discrimination fall within its purview. Courts at every level of the federal judiciary have considered the question and reached the opposite result."); *Manzanares v. Safeway Stores, Inc.,* 593 F.2d 968, 971 (10th Cir. 1979) ("Section 1981 does not apply to sex or religious discrimination.").

Accordingly, the Court DISMISSES Ms. Rhyce's § 1981 claims.

### 3. *42 U.S.C. § 1983 Claims*

Defendants make numerous arguments as to why Ms. Rhyce's § 1983 claims should be dismissed.

#### a. *Gender Discrimination—Title VII vs. § 1983*

■ Defendants' first argument places the Court squarely in the middle of a nettlesome intra-circuit split. As Defendants point out, in *Jackson v. City of Atlanta, Texas,* 73 F.3d 60 (1996) (per curiam), *cert. denied,* 519 U.S. 818, 117 S.Ct. 70, 136 L.Ed.2d 30 (1996), one Fifth Circuit panel held that Title VII was the exclusive means by which an employee may pursue a discrimination claim, and, therefore, that a plaintiff cannot bring a § 1983 discrimination claim based on the same facts. However, as Ms. Rhyce notes, in *Southard v. Texas Board of Criminal Justice,* 114 F.3d 539 (1997), another Fifth Circuit panel expressly declined to follow *Jackson* and held that a plaintiff could bring *both* a Title VII claim *and* a § 1983 claim based on the same facts. As one commentator has observed, "Since *Jackson* has not been overruled, it is difficult to forecast how a plaintiff with overlapping claims might fare in the Fifth Circuit, further illustrating the need for the Supreme Court to resolve both intra-and inter-circuit conflicts." Michele W. Homsey, *Employment Discrimination in the Public Sector: The Implied Repeal of Section 1983 by Title VII,* 15 Lab. Law. 509, 542 (Winter/Spring 2000). Since clarification from above has yet to come, the Court must choose sides, and, in this instance, selects the *Southard* panel's holding on this issue. In other words, the Court finds that Ms. Rhyce may bring both a Title VII claim and a § 1983 gender discrimination claim based on the same set of facts.

Moreover, since the Court already has found that Ms. Rhyce has stated a claim for constructive discharge under Title VII, the Court rejects Defendants' contention that she has failed to state a § 1983 claim based on an equal protection violation.

#### b. *Procedural Due Process*

■ Defendants next argue that Ms. Rhyce has failed to plead properly a § 1983 claim based on a deprivation of procedural due process. To state such a claim, a plaintiff must allege (1) that she has a property interest in her employment sufficient to entitle her to due process protection, and (2) she was deprived of her right to such process, which, stated generally, entails notice and an opportunity to be heard at a meaningful time. *See McDonald v. City of Corinth, Tex.,* 102 F.3d 152, 156 (5th Cir.1996). Without challenging the existence of a protected property interest, Defendants maintain that Ms. Rhyce has failed to allege that they forced her to resign in order to avoid subjecting their actions to the scrutiny of a termination-related hearing. *See Fowler v. Carrollton Pub. Library,* 799 F.2d 976, 981 (5th Cir.1986) ("Constructive discharge in a procedural due process case constitutes a § 1983 claim only if it amounts to forced discharge to avoid affording pretermination hearing procedures."). Moreover, they contend, Ms. Rhyce failed to take

advantage of the grievance procedure available to her—namely, La. R.S. 33:2561, which affords "[a]ny regular employee in the classified service who feels that he has been discharged or subjected to any corrective or disciplinary action without just cause" the right to "demand in writing a hearing and investigation by the board to determine the reasonableness of the action"—and, therefore, cannot complain that she was denied due process. *See Rathjen v. Litchfield,* 878 F.2d 836, 839–40 (5th Cir.1989) ("no denial of procedural due process occurs where a person has failed to utilize the state procedures available to him"); *Myrick v. City of Dallas,* 810 F.2d 1382 (5th Cir.1987).

■■■ Ms. Rhyce responds to both arguments. First, she argues that the Defendants forced her to resign precisely because they wished to avoid a pre-termination hearing. *See* Opp'n Mem. p. 10.[7] Though this might be true, nowhere is it expressly alleged in her complaint. *See* Cplt. ¶ XLVI ("Plaintiff also had a recognized property interest in her continued state employment. She was deprived of that right by the actions and inactions of Defendants."). Second, citing *Bueno v. City of Donna,* 714 F.2d 484 (5th Cir. 1983), Ms. Rhyce argues that she did not waive her right to a hearing because she did not know of Defendants' discriminatory practices until after she was forced to resign. This argument misconstrues *Bueno,* wherein the Fifth Circuit found no waiver of due process rights where the plaintiffs were aware of neither their right to a hearing nor the existence of an actual hearing mechanism. Moreover, if one accepts her constructive discharge argument, which pervades her complaint, there can be no question that Ms. Rhyce "fe[lt] that [s]he ha[d] been discharged ... without just cause" (La.R.S.33:2561) when she resigned and, therefore, could have requested a hearing under Louisiana law.

For these reasons, the Court agrees with Defendants and DISMISSES Ms. Rhyce's § 1983 claim to the extent that she alleges a procedural due process violation. Because the Court cannot resolve evidentiary issues in the context of a motion to dismiss, however, Ms. Rhyce will be allowed to amend her complaint,[8] but the Court cautions that she should do so only if there is good cause.

#### c. *Substantive Due Process*

Defendants next attack Ms. Rhyce's § 1983 claim that her substantive due process rights were violated. Relying on *McKinney v. Pate,* 20 F.3d 1550 (11th Cir.1994), Defendants argue that property interests created by state law, such as a property interest in employment, are not subject to substantive due process protection. It appears that most circuits are now of that view. *See, e.g., Nicholas v. Pennsylvania State Univ.,* 227 F.3d 133, 142–43 (3d Cir.2000) (holding that plaintiff's "tenured public employment is [not] a fundamental property interest entitled to substantive due process protection ... thereby join[ing] the great majority of courts of appeals that have addressed this issue" and citing cases). However, in

---

**7.** At certain points of her brief, Ms. Rhyce appears to argue that the avoidance of a hearing was not intentional but merely a pleasant by-product the Defendants secured by forcing her to resign. In *Fowler,* however, the Fifth Circuit was rather clear that "a valid procedural due process claim requires the employer's conduct to have been *motivated by* the desire to avoid ... a termination-related hearing." 799 F.2d at 981 (emphasis added).

**8.** The cases Defendants cite in favor of outright dismissal were decided in the context of summary judgment motions, which involve an evaluation of actual evidence.

*Schaper v. City of Huntsville*, 813 F.2d 709, 717 (1987), the Fifth Circuit held that the plaintiff had a substantive due process right in continued public employment. *See also Newman v. Massachusetts*, 884 F.2d 19, 25 (1st Cir.1989) ("school authorities who make an arbitrary and capricious decision significantly affecting a tenured teacher's employment status are liable for a substantive due process violation").

Despite this apparent victory for state employees in the Fifth Circuit, the *Schaper* court's decision was, in fact, quite narrow. In the context of public employment, the court held that "Schaper's substantive rights mirror his procedural rights," and he was therefore required to avail himself of the procedural remedies afforded him. 813 F.2d at 718. Because he had failed to do so, the Fifth Circuit held that Schaper could bring neither a procedural nor a substantive due process claim.

In light of *Schaper* and the Court's earlier ruling on Ms. Rhyce's procedural due process claim, the Court DISMISSES Ms. Rhyce's § 1983 substantive due process claim.

#### d. *Qualified Immunity*

■ Defendants next contend that Ms. Rhyce's § 1983 claims should be dismissed against the individual defendants on the basis of qualified immunity. As the Fifth Circuit stated in *Fontenot v. Cormier*, 56 F.3d 669, 673 (5th Cir.1995) (internal citation omitted), the examination of a claim of qualified immunity is a two-step inquiry:

> First, a court must determine whether plaintiff has alleged a violation of a clearly established right. Second, the court must determine whether the offic[ial]'s conduct was objectively reasonable in light of the legal rules applicable at the time of the alleged violation.

*See also Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1305 (5th Cir.1995). There is no question that Ms. Rhyce has satisfied the first step of this inquiry, *see Wallace v. City of New Orleans*, 654 F.2d 1042, 1046–47 (5th Cir.1981) ("It is absolutely certain ... that one has a constitutional right to be free from discrimination on the basis of sex, *Califano v. Goldfarb*, 430 U.S. 199, 217, 97 S.Ct. 1021, 1032, 51 L.Ed.2d 270 (1977)."), and the Court agrees with Ms. Rhyce that it is inappropriate to address the factual issues relevant to the second step in the context of a motion to dismiss.

#### 4. *42 U.S.C. § 1986 Claim*

■ Defendants also attack Ms. Rhyce's § 1986 claim on the grounds that, under the single entity doctrine, she cannot plead a predicate § 1985 conspiracy.

■ Section 1986 provides a cause of action against one who neglects to prevent a known civil rights conspiracy. To state a § 1986 claim, a plaintiff must allege the existence of a conspiracy under § 1985, *see Park v. City of Atlanta*, 120 F.3d 1157, 1160 (11th Cir.1997) ("The text of § 1986 requires the existence of a § 1985 conspiracy."), which in turn requires an allegation of four elements: (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. *See Hilliard v. Ferguson*, 30 F.3d 649, 652 (5th Cir. 1994).

Defendants contend that Ms. Rhyce cannot allege the first element because, under the single entity doctrine, the individual defendants, as employees of the Fire District, cannot be considered individuals sep-

arate from the Fire District. *See id.* at 653 (holding that a school board and its employees constitute a single entity incapable of conspiring with itself for purposes of § 1985(3)); *Benningfield v. City of Houston,* 157 F.3d 369, 378 & n.3 (5th Cir.1998) (indicating that *Hilliard* is still good law and rejecting argument similar to that made by Ms. Rhyce), *cert. denied sub nom., Benningfield v. Nuchia,* 526 U.S. 1065, 119 S.Ct. 1457, 143 L.Ed.2d 543 (1999). The Court agrees with Defendants and DISMISSES Ms. Rhyce's § 1986 claim.

### 5. *ADA Claim*

Ms. Rhyce consents to the dismissal of her Americans with Disabilities Act claim.

### B. *Louisiana State Law Claims*

In addition to her federal claims, Ms. Rhyce alleges numerous state law claims, which the Defendants move to dismiss, and, with respect to one claim, for a more definite statement.

### 1. *Breach of Contract*

■ In Count Two, Ms. Rhyce alleges that her February 2000 reinstatement agreement with the Fire Board "amounted to a contract of employment," Cplt. ¶ LII, which she alleges the Board breached in bad faith. Defendants respond that several of the agreement's purported terms were in direct violation of Louisiana law and unenforceable. *See* La. R.S. 33:2533(20) ("An employee [of a fire district] who is finally discharged or resigns from his position shall forfeit all accumulated seniority."); La. R.S. 33:1963 ("On the day of the shift of [fire-fighting] forces the day force shall be on duty twenty-four hours."). The Court agrees with Ms. Rhyce that these statutes do not necessarily preclude the terms of the agreement, nor do they necessarily preclude a public

employer from remedying its own acts of discrimination.

Alternatively, Defendants argue that the employment agreement could have been only with the Fire District, Ms. Rhyce's employer, not with the Fire Board or the individual defendants. Ms. Rhyce does not oppose this argument in her Memorandum, and the Court agrees. *See Allen v. Tulane Univ.,* 1993 WL 459949,*4 (E.D.La. Nov. 2, 1993) (McNamara, J.) (dismissing breach of contract claim against architecture dean, who had made a written offer to hire plaintiff on behalf of the university but was not a party to the agreement). Accordingly, the Court DISMISSES Ms. Rhyce's breach of contract claim against the Fire Board and the individual defendants.

### 2. *State Anti-discrimination Claims*

■ In Count Three, Ms. Rhyce "avers that Defendants intentionally discriminated against her with regard to the terms, condition, and privileges of her employment because of her sex or gender," in violation of La. R.S. 23:332, *et seq.,* and La. R.S. 51:2231, *et seq.*

Citing *Spears v. Rountree Oldsmobile–Cadillac Co.,* 653 So.2d 182 (La.App. 2d Cir.1995), Defendants argue that the claims under La. R.S. 23:332 should be dismissed against the Fire Board and the individual defendants. In *Spears,* the court stated that because Louisiana's anti-discrimination law is substantively similar to Title VII, it is "appropriate to consider interpretations of the federal statute" when applying state law, *id.* at 184, and further noted that "[b]oth federal and Louisiana sexual discrimination laws apply only to employers." *Id.*

In opposition, Ms. Rhyce cites *Lee v. Entergy Operations, Inc.,* 1995 WL 448011 (E.D.La. July 26, 1995), in which Judge Vance, relying in part on *Spears,* held that

the plaintiff could maintain an action against her supervisors in their official capacities under Louisiana anti-discrimination law. Importantly, Judge Vance noted that the defendants in *Lee* "provided no authority for the dismissal of defendants who may be liable only in their official, rather than in their individual, capacities." *Id.* at *4. Subsequent to *Lee,* however, the Fifth Circuit in *Indest* held that "a party may not maintain a suit against both an employer and its agent under Title VII." 164 F.3d at 262 (discussed *supra* ).

Assuming the continued similarity between federal and Louisiana sexual discrimination law, the Court finds that *Indest* implicitly overruled that portion of the *Lee* decision upon which Ms. Rhyce relies and, for the same reasons stated with respect to her Title VII claims, DISMISSES Ms. Rhyce's Louisiana anti-discrimination claims against the Fire District personnel in their individual and official capacities.

### 3. *Intentional Infliction of Emotional Distress*

█ In Count Four, Ms. Rhyce alleges that "Defendants' conduct, including the discriminatory practices, death threats . . ., and the continued harassment and defamatory practices[,] and the refusal . . . to put a halt to and/or punish same, . . . were so extreme and outrageous as to go beyond all possible bounds of decency and were atrocious and utterly intolerable." She alleges that Defendants intentionally and successfully inflicted severe emotional distress upon her and notes that the threats were particularly damaging given her dangerous profession.

Facially, it appears that these allegations are sufficient to state a claim for intentional infliction of emotional distress under Louisiana law. *See White v. Monsanto Co.,* 585 So.2d 1205, 1209 (La.1991) ("in order to recover for intentional inflic-

tion of emotional distress, a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct"). But, seizing upon limiting language in *White* and *Nicholas v. Allstate Insurance Co.,* 765 So.2d 1017 (La.2000), as well as an Eastern District case, *Henson v. Bassett Furniture Industries, Inc.,* 2000 WL 1477496 (E.D.La. Oct.4, 2000) (Schwartz, J.), Defendants argue that Ms. Rhyce has failed to plead her claim with sufficient particularity and that the complained of conduct is not sufficiently "extreme and outrageous" so as to support a claim for intentional infliction of emotional distress.

█ The Court disagrees. Although "[l]iability does not extend to mere . . . threats," *White,* 585 So.2d at 1209, the Court finds that the threats described in Ms. Rhyce's complaint-threats involving a plausible possibility of death by fire—can form the basis of a claim for intentional infliction of emotional distress under Louisiana law. Moreover, when viewed in context, the threats, even if made on just one occasion, can be seen as part of "a pattern of deliberate, repeated harassment over a period of time." *Nicholas,* 765 So.2d at 1026. Finally, the mere fact that Ms. Rhyce has not described in detail the damages she sustained will not defeat her claim at the pleading stage.

### 4. *Defamation*

█ In Count Five, Ms. Rhyce alleges that Fire District employees made "false and defamatory statements" about her "in the fire station(s) and during Captains' meeting(s) to other Fire District employees, including but not limited to Chief

Kennedy. These intentional statements damaged Plaintiff's reputation, both professionally and personally." Presumably this claim relates, at least in part, to the allegations contained in paragraph XXVII of the Complaint: "Upon information and belief, Defendant Smith also made defamatory as well as discriminatory statements concerning Plaintiff to others in the firehouse and other employees of the Fire District throughout the period of time in question after the February, 2000 Board meeting." Ms. Rhyce alleges that she received this information from a former colleague. *See* Cplt. ¶¶ XXVI & XVII. Defendants argue that Ms. Rhyce has failed to plead this cause of action with sufficient particularity, necessitating that the Court dismiss the claim or require Ms. Rhyce to provide a more definite statement.

The Court will do neither. As to the motion to dismiss, the Court finds that Ms. Rhyce has met the minimum standard required to plead a defamation claim under Louisiana law in federal court, which, unlike Louisiana state court, commands only notice pleading. *See Fitzgerald v. Tucker,* 737 So.2d 706, 715 (La.1999) ("In order to prevail in a defamation action, a plaintiff must necessarily prove four elements: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury."). As to the motion for a more definite statement, Defendants are free to plead a lack of sufficient knowledge or information in their answer (pursuant to Federal Rule of Civil Procedure 8(b)), and the Court is confident that the exact content and circumstances of the alleged defamatory statements will be fleshed out during discovery. After discovery, the Court or the trier of fact can address Defendants' fact-based defenses, asserted improperly in this 12(b)(6) motion.

### 5. *Conspiracy*

In Count Six, Ms. Rhyce alleges that the "Defendants conspired to intentionally and willfully violate the Standard Operating Guidelines of the Fire District, to discriminate against [her] and to deprive her of her right to continued state employment, to harass and threaten her, and to inflict severe emotional distress." Defendants argue that Ms. Rhyce's conspiracy claim fails for two reasons.

More fundamentally, Defendants, quoting *Jefferson v. Lead Industries Association,* 930 F.Supp. 241, 247 (E.D.La. 1996) (Vance, J.), note that "Louisiana law does not recognize an independent cause of action for civil conspiracy." Based on this quote, Defendants imply that Louisiana does not recognize *any* cause of action for civil conspiracy. This argument is utterly meritless, as a continued reading of Judge Vance's opinion reveals: "Louisiana law does not recognize an independent cause of action for civil conspiracy. Rather, Louisiana Civil Code article 2324 provides that 'he who conspires with another person to commit an intentional or willful act is answerable in solido with that person for the damage caused by such act.' The actionable element under article 2324 is the intentional tort the conspirators agreed to commit and committed in whole or in part causing plaintiff's injury." *Id.* at 247–48 (internal citation omitted). Ms. Rhyce has alleged at least one underlying intentional tort-intentional infliction of emotional distress—which this Court already has found properly pled.

Defendants also argue, based on the single entity doctrine (discussed *supra* in relation to Ms. Rhyce's § 1986 claim), that they could not have conspired with each other. Unfortunately, Defendants' support for this position comes only from

cases involving § 1985 conspiracy claims, and none involving Louisiana conspiracy law.[9] Ms. Rhyce's response focuses on the related, but importantly different, situation where a parent corporation and its subsidiary are accused of conspiring together. *See Louisiana Power and Light Co. v. United Gas Pipe Line Co.,* 493 So.2d 1149, 1155 (La.1986) (under the intra-enterprise conspiracy doctrine, "a parent and subsidiary are capable of conspiring and violating § 1 of the Sherman Act").

Absent adequate briefing, the Court cannot rule on the availability of the single enterprise doctrine as a matter of Louisiana law at this time. Defendants are free to re-urge this defense at a later time with supplemental briefing.

### C. *Vicarious Liability*

Finally, Ms. Rhyce "asserts that Defendants are vicariously liable jointly[,] severally, and in solido for the aforementioned acts of negligence. At all times, Defendants were acting as employees, agents and/or representing Defendant Fire District, and were acting in the course and scope of their duties as such." Cplt. ¶ LXIII.

■ Defendants take exception to this allegation in two ways. First, Defendants argue that, under *Monell v. New York City Department of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978), there is no vicarious liability under federal civil rights law. In *Monell,* the Supreme Court held that "governing bodies" cannot be held vicariously liable "solely on the basis of the existence of an employer-employee relationship with a tortfeasor ." *Id.* "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694, 98 S.Ct. at 2038.

■ Recently, the Fifth Circuit discussed vicarious liability under § 1983 as it relates to supervisors:

'Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability.' *Thompkins v. Belt,* 828 F.2d 298, 303 (5th Cir.1987). A sheriff not personally involved in the acts that deprived the plaintiff of his constitutional rights is liable under section 1983 if: 1) the sheriff failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights. *Smith v. Brenoettsy,* 158 F.3d 908, 911–12 (5th Cir.1998); *Doe v. Taylor Independent School District,* 15 F.3d 443, 452–54 & nn. 7–8 (5th Cir.1994) (en banc) (adopting the *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 1205 n. 10, 103 L.Ed.2d 412 (1989), standard of municipal liability for supervisory liability, thus omitting gross negligence from the *Hinshaw* test); *Hinshaw v. Doffer,* 785 F.2d 1260, 1263 (5th Cir.1986).

*Thompson v. Upshur County, Tex.,* 245 F.3d 447, 458 (5th Cir.2001).

---

9. The Court notes that the single-entity doctrine appears to be derived from general conspiracy law. In *Nelson Radio & Supply Co. v. Motorola, Inc.,* 200 F.2d 911, 914 (5th Cir. 1952), upon which the *Hilliard* court relied, *see* 30 F.3d at 653 n. 14, the Fifth Circuit

stated, "A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation." At this time, the Court is unable to determine whether Louisiana has adopted this rule.

 Although ostensibly opposing Defendants' argument, Ms. Rhyce seems to realize that her vicarious liability claim is doomed insofar as it relates to her § 1983 claim, as she argues that the Board could be found liable for deliberate indifference. As recognized by the Fifth Circuit in *Doe v. Taylor Independent School District,* 15 F.3d 443 (5th Cir.1994) (en banc), requiring "deliberate indifference" as an element of liability is crucially different from imposing "vicarious liability." *See id.* at 456 ("Although supervisory officials cannot be held liable solely on the basis of their employer-employee relationship with a tortfeasor, they may be liable when their own action or inaction, including a failure to supervise that amounts to gross negligence or deliberate indifference, is a proximate cause of the constitutional violation.").

Defendants further argue that vicarious liability runs from employee to employer, but not in the opposite direction. In other words, while in certain cases an employer can be held vicariously liable for the acts of its employees, an employee cannot be held vicariously liable for the actions of its employers (or of other employees). Indeed, by definition the doctrine of respondeat superior "hold[s] an *employer or principal liable* for the employee's or agent's wrongful acts committed within the scope of the employment or agency." BLACK'S LAW DICTIONARY 1313 (7th ed.1999) (emphasis added). The Court therefore agrees with Defendants that "[t]o the extent that Plaintiff's state law claims may be viable, they cannot form the basis of vicarious liability claims against the individual defendants." Def.s' Mem. in Supp. p. 19.

Accordingly, the Court DISMISSES all vicarious liability claims against the individual defendants and all § 1983 vicarious liability claims.

### III. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Defendants' Motion to Dismiss, or in the Alternative, Motion for a More Definite Statement is GRANTED IN PART and DENIED IN PART. The Court DISMISSES the following claims:

(1) Ms. Rhyce's Title VII and state law anti-discrimination claims against the Fire District personnel in their individual and official capacities;

(2) Ms. Rhyce's § 1981 claim;

(3) Ms. Rhyce's § 1983 claims premised on deprivations of procedural and substantive due process (with leave to amend);

(4) Ms. Rhyce's ADA claim;

(5) Ms. Rhyce's breach of contract claims against the Fire Board and the individual defendants; and

(6) Ms. Rhyce's vicarious liability claims against the individual defendants and all § 1983 vicarious liability claims.