Rolisha GOINS, Plaintiff,

v.

HITCHCOCK I.S.D. et al., Defendants.

No. G-01-498.

United States District Court,
S.D. Texas,
Galveston Division.

March 20, 2002.

ORDER DENYING PLAINTIFF'S MO-
TION REQUESTING A SPECIAL
MASTER AND GRANTING DE-
FENDANTS' UNOPPOSED PAR-
TIAL MOTION TO DISMISS

KENT, District Judge.

On August 16, 2001, Plaintiff Rolisha Goins ("Goins") filed this gender discrimination lawsuit against Defendants Hitchcock Independent School District ("HISD"), Josie M. Orr ("Orr"), individually and in her official capacity as President of the HISD Board of Education, Ron Meier ("Meier"), individually and in his official capacity as Vice President of the HISD Board of Education, Doris Scurry–Kennedy ("Scurry–Kennedy"), individually and in her official capacity as Secretary of the HISD Board of Education, Pat Turner ("Turner"), individually and in her official capacity as a member of the HISD Board of Education, Ricky Bond ("Bond"), individually and in his official capacity as a member of the HISD Board of Education, Shawn Kadlecek ("Kadlecek"), individually and in his official capacity as a member of the HISD Board of Education, Ruth A. Kane ("Kane"), individually and in her official capacity as Superintendent of HISD, and Bill Banks ("Banks"), individually and in his official capacity as former Superintendent of HISD. Based upon her allegations that Defendants intentionally discriminated against her on the basis of her gender and race, Plaintiff seeks injunctive relief, declaratory relief and monetary damages pursuant to 42 U.S.C. § 1983, 42 U.S.C § 1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, and Texas state tort law. Now before the Court is Plaintiff's Motion Requesting a Special Master, filed February 21, 2002, and Defendants' Unopposed Partial Motion to Dismiss, filed

Ronald J Merriweather, Houston, TX, for plaintiff.

Bridget R Robinson, Walsh Anderson et al., Austin, TX, for defendants.

December 18, 2001.[1] For the reasons articulated below, Plaintiff's Motion Requesting a Special Master is hereby **DENIED** and Defendants' Unopposed Partial Motion to Dismiss is hereby **GRANTED.**

## I.

The following facts are relevant to the Court's consideration of the instant Motions. Plaintiff began coaching women's basketball and volleyball for HISD in August of 1993. Five years later, she filed a Title IX lawsuit against HISD ("1998 Lawsuit") alleging intentional gender discrimination by the school district. In that action, Plaintiff primarily contended that HISD's female and male athletic programs were funded in a disparate manner and that HISD's male athletes and coaches received preferential treatment.[2] Rather than engaging in prolonged litigation, the Parties resolved the 1998 Lawsuit by executing a "Settlement Agreement and Mutual Release of Claims" ("Settlement Agreement") on January 19, 1999. The Settlement Agreement comprehensively addressed Plaintiff's concerns about the alleged gender inequality in HISD athletics.[3] Moreover, a lengthy portion of the Settlement Agreement outlined HISD's plan to form a district committee with "jurisdiction to consider claims of gender inequality in athletics under Title IX."[4] The Parties agreed that Plaintiff's "sole and exclusive remedy for any alleged gender inequality in athletic programs action-

1. Although Defendants' Partial Motion to Dismiss was filed over three months ago, Plaintiff still has not responded to that Motion. Consequently, the Court will treat Defendants' Partial Motion to Dismiss as unopposed.

2. Plaintiff specifically alleged the following facts in the 1998 lawsuit: (1) HISD's budget for coaching, uniforms, equipment and sports-related travel allowances failed to mirror the gender balance of its student population; (2) HISD's male athletic teams were treated preferentially with respect to practice times, facilities and scheduling; (3) HISD's male teams (but not its female teams) were accompanied by police escorts and security personnel to competitions; (4) HISD compensated female coaches at a lower rate than male coaches; (5) HISD provided its male athletes with more locker space and better practice and competition facilities; (6) HISD's male athletes received greater support from administration, cheerleaders and auxiliary groups than its female athletes; (7) HISD operated concession stands at male (but not female) sporting events; (8) HISD provided male athletes (but not female athletes) with trophies, ribbons and banners in a timely manner; (9) HISD organized and funded a yearly banquet for male athletes, but did not organize a similar event to honor its female athletes; (10) HISD administrators typically traveled with male (but not female) athletes to sporting events; and (11) HISD provided a chartered bus to transport football players to the playoffs, but only provided a yellow school bus to transport female basketball players to the playoffs.

3. The Settlement Agreement created policies to govern the following issues: practice times, police escorts, security, trainer access, pep rallies, cheerleaders, booster organizations, concession stands, motivational speakers, promotional posters, championship banners, parent nights, school marquees, academic tutoring, coaching clinics and athletic facilities.

4. As contemplated by the Settlement Agreement, the HISD Title IX Committee would thereafter receive written complaints regarding potential Title IX issues in the district and consider those complaints within thirty (30) days post-submission. Within sixty (60) days after reviewing a complaint, the Title IX Committee would enter written findings and make a written recommendation concerning the resolution of the complaint to the HISD Board of Trustees. The Board of Trustees would then endeavor to review all recommendations by the Title IX Committee within sixty (60) days following receipt and subsequently vote to accept, accept in part or reject such recommendations. In the event that the complaining individual wished to appeal the action of the Board of Trustees after the vote, that individual would then (and only then) become eligible to file a "Request for Review by Special Master" with this Court.

able under Title IX arising after the effective date of [the Settlement Agreement would] be the presentation of a claim to the Title IX Committee, and the pursuit of administrative remedies through such Committee."

Unfortunately for both Plaintiff and Defendants, the Settlement Agreement failed to finally resolve Plaintiff's concerns. Because she believed that the HISD athletics program remained rife with gender discrimination, Plaintiff filed a complaint against the District with the United States Equal Employment Opportunity Commission ("EEOC") in early 2001. After the EEOC issued her a "Right to Sue" letter on May 23, 2001, Plaintiff filed this lawsuit alleging that "[a]fter the settlement agreement was entered and filed of record, Defendants again began a campaign of deliberate discrimination [against her]." Specifically, Plaintiff alleges that, following the execution of the Settlement Agreement, (1) Defendants offered Plaintiff an employment contract which purported to pay her a salary that was equal to that of her male co-workers; (2) Plaintiff agreed to the employment contract, but later discovered that Defendants had misrepresented the fact that she would be compensated at a rate equal to the pay rate of her male co-workers; and (3) when she subsequently brought the matter before the Board of Trustees, the members "each steadfastly refused to offer her compensation that was consistent with the settlement agreement." Plaintiff further contends that Defendants "attempted to force [her] to accept lesser compensation by placing her in a false light with her peers ...[,] began a campaign to 'black ball' her in the community and discourage future employers from offering her a contract of employment ... [,

and] actively discouraged the other employees of the District to interact with [her]." Defendants' actions allegedly had the effect of fully ostracizing Plaintiff from her co-workers. Plaintiff resigned from her HISD coaching position in June of 2000.

## II.

At a Rule 16 scheduling conference held January 4, 2002, the Court abated the instant action for forty-five days in order to allow Plaintiff's attorney to familiarize himself with the case.[5] At that time, the Court instructed Plaintiff and Defendants to conduct informal discovery during the interim period as a means of assessing the viability (or lack thereof) of the claims at issue. Defense counsel subsequently informed counsel for Plaintiff that all of the Defendants' documentation pertaining to the viability issue had been submitted to the EEOC with Defendants' Response to Plaintiff's EEOC Complaint. Therefore, it was the Defendant's position that all of the documents relevant to the viability issue were already in Plaintiff's possession.

Nevertheless, Plaintiff's counsel mailed two letters to Defense counsel after the scheduling conference requesting a massive array of additional documents. The list of requested materials included (1) Defense counsel's entire case file from the 1998 Lawsuit; (2) the full text of the HISD liability policy; (3) the HISD evaluations and performance reviews of Banks from 1998 until he left HISD; (4) the complete records of the HISD Title IX committee; (4) all records related to Title IX complaints since the filing of the 1998 Lawsuit; (5) the vote records of all Title IX issues brought before the HISD Board of Trustees since the filing of the 1998 Lawsuit;

5. On January 4, 2002, Plaintiff's current attorney had only recently assumed the role of Plaintiff's lead counsel.

(6) the employment contracts for all HISD coaches from 1998 forward or, alternatively, a verified letter from the HISD superintendent setting forth the sports coached by each coach; and (7) a verified copy of Plaintiff's HISD employment file. Defendants objected to each of these requests via a letter dated February 8, 2002.[6] Frustrated by these objections, Plaintiff now seeks the appointment of a Special Master to oversee discovery. Specifically, Plaintiff submits that "[d]ue to a tremendous lack of cooperation of HISD, in informal discovery, in the instant action and a complete lack of formal discovery in [her previous lawsuit], it is recommended to this Court, to appoint a Special Master, with broad powers to view and copy HISD documents, to take sworn testimony, and based upon these findings, to make recommendation to this Court, on the Title VII, and Title IX allegations in this lawsuit." In response, Defendants argue that the appointment of a Special Master is unnecessary in this case because (1) Defendants have reasonably complied with the informal discovery process;[7] (2) any lack of discovery that may have occurred in the

1998 Lawsuit has no bearing on the present action; and because (3) the Court can consider and rule on dispositive motions without the aid of a Special Master. The Court agrees with Defendants.

### III.

 Generally, Rule 53 permits masters to be appointed only in exceptional circumstances. *See* Fed.R.Civ.P. 53(b) (stating that reference to a master "shall be the exception and not the rule"); *see also Burlington Northern v. Dep't of Revenue,* 934 F.2d 1064, 1071 (9th Cir.1991) (citing *United States v. Suquamish Indian Tribe,* 901 F.2d 772, 775 (9th Cir.1990) for the proposition that "Although masters may . . . be appointed because of the complexity of litigation, we strictly apply Rule 53(b) to require a showing of exceptional conditions to justify the appointment"). Moreover, it is well-settled that "[t]he use of masters is 'to aid judges in the performance of specific judicial duties, as they may arise in the progress of a cause,' and not to displace the court." *La Buy v. Howes Leather Co.,* 352 U.S. 249, 256, 77

---

**6.** These objections can be summarized as follows: (1) Defendants refused to comply with Plaintiff's request for the case file from the 1998 Lawsuit on the basis of attorney-client privilege (Defendants pointed out, however, that the non-privileged portions of the file are available as a matter of public record); (2) Defendants objected to Plaintiff's request for the full text of the HISD liability policy as outside the scope of discovery permitted by Fed.R.Civ.P. 26(a)(1)(D); (3) Defendants objected to Plaintiff's request for the HISD evaluations and performance reviews of Banks as an unwarranted invasion of Banks's personal privacy rights and because such records are deemed confidential by law; (4) Defendants objected to Plaintiff's request for the complete records of the Title IX Committee as overly broad, not limited in time and scope, irrelevant to any issue in this case and not reasonably calculated to lead to the discovery of admissible evidence; (5) Defendants objected to Plaintiff's request for the vote records of all

Title IX issues brought before the HISD Board of Trustees as overly broad, not limited in time and scope, irrelevant to any issue in this case, not reasonably calculated to lead to the discovery of admissible evidence and as invasive of the deliberate process privilege; and (6) Defendants objected to Plaintiff's request for each and every athletic coaches contract as overly broad, not limited in time and scope, irrelevant to any issue in this case, not reasonably calculated to lead to the discovery of admissible evidence and as invasive of the constitutional rights of individuals not involved in this litigation. Finally, Defendants objected to Plaintiff's request for a verified letter because it required Defendants to create a document. Defendants did agree to forward a copy of Plaintiff's employment file to Plaintiff's counsel "in the very near future."

**7.** Defendants support this contention with the fact that they have already produced 372 pages of documents to Plaintiff.

S.Ct. 309, 313, 1 L.Ed.2d 290 (1957) (citation omitted) (holding that a congested docket, the complexity of issues and the extensive amount of time required for a trial do not, either individually or as a whole, constitute an exceptional condition justifying a Rule 53 appointment of a Special Master in an antitrust case); *Sierra Club v. Clifford*, 257 F.3d 444, 446 (5th Cir.2001) ("The fact that a case has been pending for two years is not so exceptional as to require the reference of dispositive matters ... to a special master. The same applies to voluminous filings containing highly technical documents and declarations, which is pretty much the norm for modern federal litigation"); *Piper v. Hauck*, 532 F.2d 1016, 1019 (5th Cir.1976) (holding that a crowded docket and the plaintiff's filing of sixteen different lawsuits in the same court did not constitute an exceptional condition warranting a reference of the trial to a magistrate judge under Rule 53); *see also* 9A Wright & Miller, *Federal Practice and Procedure: Civil 2d* § 2605 (explaining that reference of a non-jury case to a Special Master usually requires a restrictive standard because it "not only involves expense and delay, but, since the master's findings must be accepted unless they are clearly erroneous, it also involves the danger that the master, as a practical matter, not the court, will decide the case."). However, the "exceptional circumstances" standard is somewhat relaxed in the area of Title VII, "where justice delayed is very often justice denied." *Hackley v. Roudebush*, 520 F.2d 108, 154 n. 181 (D.C.Cir.1975) (citations omitted) (explaining that 42 U.S.C. § 2000e–5(f)(5) authorizes the appointment of a Special Master in non-exceptional circumstances when a District Court is unable to comply with Title VII's mandate to expedite discrimination cases).

■ In this lawsuit, however, even though the relaxed standard for the appointment of Special Masters in Title VII cases applies, the Court nevertheless finds Plaintiff's Request for a Special Master wholly unwarranted. The evidence submitted by both Plaintiff and Defendants indicates that, contrary to Plaintiff's assertion, Defendants have fully cooperated with Plaintiff during the informal discovery period. Defendants made a substantial amount of documentation available to Plaintiff for review during the interim period and have made valid and eminently reasonable objections to several of Plaintiff's requests. Rather, it is Plaintiff who has acted unreasonably. The Court explicitly instructed counsel for both Parties that the documents exchanged during the informal discovery period were to pertain solely to the issue of whether Plaintiff's claims had any merit whatsoever. Nonetheless, Plaintiff interpreted this instruction as an invitation to seek copious amounts of information from Defendants, some of which appears privileged or otherwise non-discoverable.[8] Moreover, at least one the requested documents does not even exist. Nevertheless, Plaintiff seeks the appointment of a Special Master because the Defendants have supposedly failed to cooperate!

In light of the relevant circumstances, the Court concludes that referring this case to a Special Master would only delay the ultimate resolution of this case and bring about considerable added expenses for all involved, without providing any corresponding benefits to the Parties. This Court has handled literally hundreds of

---

8. The Court stresses that is not making any ruling on the validity of Defendants' objections to Plaintiff's discovery requests at this time. Rather, the Court is merely considering Defendants' objections as one factor in the Court's decision to appoint (or not appoint) a Special Master in this lawsuit.

Title VII and Title IX cases over the past eleven and one-half years, and to suggest that the Court requires a Special Master to aid the Court in understanding the issues at hand or in dealing with routine discovery disputes is wholly unjustified. Put another way, if this Court appointed a Special Master each and every time that a party objected to the manner in which another party was responding to its discovery requests, Special Masters would become the rule—not the exception. Such a situation would violate the explicit directive of Fed.R.Civ.P. 53(b) and lead to an altogether undesirable result. Furthermore, there is no suggestion that this litigation has involved any unreasonable delays that are frustrating Title VII's subsidiary goal of expediting discrimination cases. Rather, it is the Court's belief that this lawsuit is proceeding in a reasonably expeditious manner. Accordingly, Plaintiff's Request for a Special Master is hereby respectfully **DENIED.**

## IV.

The Court now turns to Defendants' Unopposed Partial Motion to Dismiss. In their Motion, Defendants seek a dismissal of all claims asserted against Defendants Orr, Meier, Scurry–Kennedy, Turner, Bond, Kadlecek, Kane and Banks (the "Individual Defendants") in both their official and individual capacities.

### Official Capacity Claims

 It is well settled that a judgment against a public servant "in his official capacity" imposes liability on the entity that he represents. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691 n. 5, 98 S.Ct. 2018, 2036 n. 55, 56 L.Ed.2d 611 (1978) (indicating that "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent"); *Turner v. Houma Mun. Fire and Police Civil Serv.,* 229 F.3d 478, 483 (5th Cir.2000); *Welch v. Laney,* 57 F.3d 1004, 1007 (11th Cir.1995); *Shuford*

*v. Alabama State Bd. of Educ.,* 968 F.Supp. 1486, 1515 (M.D.Ala.1997). The Supreme Court discussed this proposition in *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985), stating that "[a]s long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* Consequently, Plaintiff's claims against the Individual Defendants in their official capacities are simply a reformulation of her claims against HISD. Given that Plaintiff has named HISD as a Defendant in this action, her official capacity claims for relief as to the remaining Individual Defendants are redundant. *See Clark v. La Marque Indep. Sch. Dist.,* 184 F.Supp.2d 606 (S.D.Tex.2002); *Wallace v. City of Montgomery,* 956 F.Supp. 965, 976 (M.D.Ala. 1996). Therefore, Defendants' Unopposed Partial Motion to Dismiss is hereby **GRANTED** with respect to all claims brought against the Individual Defendants in their official capacities.

### Individual Capacity Claims

Next, Defendants move to dismiss the claims asserted against the Individual Defendants in their individual capacities pursuant to Fed.R.Civ.P. 12(b)(6). A party is entitled to dismissal under Fed.R.Civ.P. 12(b)(6) when an opposing party fails to state a claim upon which relief can be granted. When considering a 12(b)(6) motion, the Court accepts as true all well-pleaded allegations in the complaint, and views them in a light most favorable to the plaintiff. *See Malina v. Gonzales,* 994 F.2d 1121, 1125 (5th Cir.1993). "However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Fernandez–Montes v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th Cir.1993). Unlike a motion for summary judgment, a motion to

dismiss should be granted only when it appears without a doubt that the plaintiff can prove no set of facts in support of her claims that would entitle her to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Home Capital Collateral, Inc. v. FDIC,* 96 F.3d 760, 764 (5th Cir.1996); *Tuchman v. DSC Communications Corp.,* 14 F.3d 1061, 1067 (5th Cir.1994). The Fifth Circuit has noted that dismissal for failure to state a claim is disfavored and is appropriate only in rare circumstances. *See Mahone v. Addicks Util. Dist. of Harris County,* 836 F.2d 921, 926 (5th Cir.1988).

A. *Individual Capacity Claims brought pursuant to Title IX*

■ Although the Fifth Circuit has not directly addressed the issue of individual liability under Title IX, the majority of courts that have considered the issue have ruled that Title IX does not permit suits against individuals. *See Boulahanis v. Bd. of Regents,* 198 F.3d 633, 640 (7th Cir. 1999); *Kinman v. Omaha Pub. Sch. Dist.,* 171 F.3d 607, 611 (8th Cir.1999); *Smith v. Metro. Sch. Dist. Perry Township,* 128 F.3d 1014, 1019 (7th Cir.1997); *Lipsett v. Univ. of Puerto Rico,* 864 F.2d 881, 901 (1st Cir.1988); *Brooks v. Tulane Univ.,* 1996 WL 709424, *2 (E.D.La.1996); *Bowers v. Baylor Univ.,* 862 F.Supp. 142, 145–46 (W.D.Tex.1994); *Garza v. Galena Park Indep. Sch. Dist.,* 914 F.Supp. 1437, 1438 (S.D.Tex.1994); *Doe v. Petaluma City Sch. Dist.,* 830 F.Supp. 1560, 1577 (N.D.Cal. 1993); *Bougher v. Univ. of Pittsburgh,* 713 F.Supp. 139, 143 (W.D.Pa.1989), *aff'd,* 882 F.2d 74 (3d Cir.1989). Agreeing with the sound and persuasive reasoning in these cases, the Court concludes that, as a matter of law, Title IX will not support an action by Plaintiff against the Individual Defendants in their individual capacities. Accordingly, Defendants' Unopposed Partial Motion to Dismiss is hereby **GRANT-**

ED with respect to each and all of those claims.

B. *Individual Capacity Claims brought pursuant to Title VII*

■ The Fifth Circuit has clearly held that "a party may not maintain a suit against an employer and its agent under Title VII." *Indest v. Freeman Decorating, Inc.,* 164 F.3d 258, 262 (5th Cir.1999). In *Indest,* the Fifth Circuit explained that "[w]hile Title VII defines the term employer to include 'any agent' of an employer . . ., this circuit does not interpret the statute as imposing individual liability for such a claim." *Id.; see also Grant v. Lone Star Co.,* 21 F.3d 649, 651–53 (5th Cir. 1994); *Hawthorne v. Reily Foods Co.,* 2001 WL 902596, at *2 (E.D.La. Aug.9, 2001); *Rhyce v. Martin,* 173 F.Supp.2d 521, 528–29 (E.D.La.2001); *Evans v. N. Street Boxing Club,* 83 F.Supp.2d 744, 747 (W.D.La. 1999). Consequently, Plaintiff cannot maintain her Title VII claims against the Individual Defendants, as a matter of law. Accordingly, Defendants' Unopposed Partial Motion to Dismiss is hereby **GRANTED** with respect to the Title VII claims brought against the Individual Defendants in their individual capacities.

C. *Individual Capacity Claims brought pursuant to § 1981*

■ Section 1981 prohibits racial discrimination that interferes with the making or enforcement of a contract, the enjoyment of the benefits accompanying a contractual relationship or the conditions of a contractual relationship. *See* 42 U.S.C. § 1981. In order to sustain a claim under § 1981 against the Individual Defendants, Plaintiff must show that (1) she belongs to a racial minority; (2) the Individual Defendants intended to discriminate against her on the basis of race; and (3) such discrimination involved an activity

enumerated in the statute (i.e., the making and enforcing of a contract). *See Green v. State Bar of Texas*, 27 F.3d 1083, 1086 (5th Cir.1994). The facts alleged in Plaintiff's Original Complaint, even when viewed in a light most favorable to her, fail to satisfy any of these elements. First, Plaintiff's Original Complaint does not include any indication of her race at all. More importantly, *all* of Plaintiff's factual allegations pertain to gender discrimination alone.[9] In fact, the only reference to racial discrimination in Plaintiff's Original Complaint is contained in one conclusory statement: "Plaintiff has suffered intentional discrimination under 42 U.S.C. § 1981 by Defendant failing to allow Plaintiff to contract on the same basis as white citizens." Without any factual allegations whatsoever that infer or support a claim of racial discrimination, this single statement cannot not suffice to prevent a motion to dismiss. Accordingly, Defendants' Unopposed Partial Motion to Dismiss is hereby **GRANTED** with respect to Plaintiff's claims brought against the Individual Defendants pursuant to § 1981.

D. *Individual Capacity Claims brought pursuant to § 1983*

 Section 1983 provides a cause of action against "[e]very person who, under color of any statute ... of any State ... subjects, or causes to be subjected, any citizen ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws...." 42 U.S.C. § 1983; *see also Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir.2000) (citing *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir.1994)). "Rather than creating substantive rights, § 1983 simply provides a remedy for the rights that it designates." *Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1573 (5th Cir.1989). Therefore, an underlying constitutional or statutory violation is a predicate to liability under § 1983. *See id.* In the instant suit, Plaintiff asserts that the free speech provisions of the First Amendment provide the requisite underlying constitutional violation for her § 1983 cause of action.

 To successfully establish a § 1983 claim of retaliation for the exercise of free speech, Plaintiff must prove that: (1) Defendants were acting under the color of state law; (2) Plaintiff's speech activities were protected under the First Amendment; and (3) Plaintiff's exercise of her protected right was a substantial motivating factor in Defendants' actions. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977); *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir.1997). Furthermore, because she was a public employee at the time of the alleged constitutional violation, Plaintiff must also demonstrate that the speech at issue dealt with a matter of public concern, *see Schultea v.*

---

**9.** It is well-settled that gender discrimination claims do not fall within the scope of § 1981. *See Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684, 693 (2d Cir.1998) (holding that claims of gender discrimination are "plainly outside the scope of § 1981, which deals with discrimination on the basis of race or alienage"); *Jones v. Bechtel*, 788 F.2d 571, 574 (9th Cir.1986) ("It is clear that section 1981 does not provide a cause of action based on sex discrimination"); *Bobo v. ITT, Cont'l Baking Co.*, 662 F.2d 340, 342 (5th Cir.1981) ("Although § 1981 strikes at many forms of racial discrimination, no court has held that allegations of gender based discrimination fall within its purview. Courts at every level of the federal judiciary have considered the question and reached the opposite result."); *Manzanares v. Safeway Stores, Inc.*, 593 F.2d 968, 971 (10th Cir.1979) ("Section 1981 does not apply to sex or race discrimination"); *Rhyce*, 173 F.Supp.2d at 529–30 ("The great weight of authority indicates that § 1981 applies only to instances of racial discrimination and will not support a claim for gender discrimination.").

*Wood,* 27 F.3d 1112, 1118 (5th Cir.1994), and show that she "suffered an adverse employment action for exercising the right to free speech." *Pierce v. Texas Dep't of Crim. Justice Inst. Div.,* 37 F.3d 1146, 1149 (5th Cir.1994).

In her Original Complaint, Plaintiff characterizes the protected speech activity implicated in her First Amendment claim as her participation in a petition to remove Banks from his position as Superintendent of HISD. According to Plaintiff, "Banks retaliated against [this] First Amendment activit[y] by failing to give her an acceptable reference for future employment, failing to allow her the opportunity to speak at the Board meetings, failing to allow her grievance to come to a vote of the Board and instructing the individual members of the Board not to interact with her concerning her complaints." [10] These allegations fail to meet the standard for an actionable First Amendment claim by a public employee, however, because Plaintiff fails to allege that she suffered an adverse employment action.[11]

Under controlling Fifth Circuit authority, adverse employment actions are significant acts such as "discharges, demotions, refusals to hire, refusals to promote, and reprimands." *Southard v. Texas Bd. of Criminal Justice,* 114 F.3d 539, 555 (5th Cir.1997). Many actions which merely have a chilling effect upon protected speech are not actionable. *See Pierce,* 37 F.3d at 1149. Actions such as "decisions concerning teaching assignments, pay increases, administrative matters, and departmental procedures," may be extremely important to the plaintiff, but do not rise to the level

of a constitutional deprivation. *Dorsett v. Bd. of Trustees for State Colleges & Universities,* 940 F.2d 121, 123 (5th Cir.1991); *see also Harrington,* 118 F.3d at 365. Here, Plaintiff does not allege that she was discharged, threatened with discharge, demoted, denied a promotion or subjected to a reduction in pay. Thus, while the Court does not doubt that the actions Plaintiff complains had a potential chilling effect on her speech activities, such activities simply do not constitute actionable adverse employment actions, as a matter of law. Given the absence of any factual allegations *whatsoever* suggesting that Plaintiff suffered an adverse employment action, the Court is compelled to find that Plaintiff has not stated a claim for any constitutional violation upon which her § 1983 claim can stand. Accordingly, Defendants' Unopposed Partial Motion to Dismiss is hereby **GRANTED** with respect to Plaintiff's claims brought against the Individual Defendants in their individual capacities pursuant to § 1983.

**E.** *Individual Capacity Claims for Intentional Infliction of Emotional Distress*

As this Court has previously explained, "[w]hen a plaintiff alleges a claim for intentional infliction of emotional distress based on the same facts making up her Title VII claim, the former is preempted." *Stewart v. Houston Lighting & Power Co.,* 998 F.Supp. 746, 757 n. 8 (S.D.Tex.1998) (citing *Jackson v. Widnall,* 99 F.3d 710, 716 (5th Cir.1996) and *Rowe v. Sullivan,* 967 F.2d 186, 189 (5th Cir. 1992)). Therefore, to the extent that

---

**10.** The specific allegations upon which Plaintiff bases her First Amendment claim are directed towards Banks alone, and do not implicate the other Defendants. However, Plaintiff's Original Complaint vaguely asserts that all of the Defendants are liable to her under § 1983. Thus, out of an overabun-

dance of caution, the Court assumes that Plaintiff's § 1983 claim has been asserted against all of the Defendants.

**11.** The Court is assuming, without deciding, that the petition to remove Banks from office dealt with matters of public concern.

Plaintiff's common law tort claim for intentional infliction of emotional distress and her Title VII claim arise from identical factual allegations, her intentional infliction of emotional distress claim cannot survive. And even if not preempted, the facts alleged by Plaintiff, even when viewed in a light most favorable to her, do not even begin to rise to the level of egregiousness that the Texas Supreme Court requires to support such a cause of action. *See Brewerton v. Dalrymple*, 997 S.W.2d 212, 216 (Tex.1999) (explaining that, in order the sustain a claim for intentional infliction of emotional distress under Texas law, the conduct at issue must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community"); *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 612–13 (Tex.1999) (explaining that mere insults, indignities, threats, annoyances and petty oppressions do not rise to the level of extreme and outrageous conduct and that the conduct required for an intentional infliction of emotional distress cause of action in the workplace exists only in the most unusual of circumstances). While the conduct that Plaintiff complains of (placing Plaintiff in a false light with her peers, organizing a campaign to 'black ball' Plaintiff in the community, discouraging future employers from offering Plaintiff an employment contract and actively discouraging HISD employees to interact with Plaintiff) is certainly deplorable, such conduct nevertheless fails to qualify as "extreme and outrageous," as a matter of law. Simply put, Plaintiff's allegations are facially insufficient to state a claim for intentional infliction of emotional distress under Texas law. Accordingly, Defendants' Unopposed Partial Motion to Dismiss is hereby **GRANTED** with respect to Plaintiff's claims brought against the Individual Defendants in their individual capacities for intentional infliction of emotional distress.[12]

In sum, the Court hereby **ORDERS** that all claims against the Individual Defendants, in their individual and official capacities are **DISMISSED WITH PREJUDICE.** A final judgment reflecting the disposition of these claims will be entered in due course. The only claims that remain pending before the Court in this lawsuit are those that Plaintiff has asserted against HISD.[13]

**IT IS SO ORDERED**

---

**12.** The Court acknowledges that the Individual Defendants assert a qualified immunity defense in response to Plaintiff's claim for intentional infliction of emotional distress. However, because the Court finds that Plaintiff has not stated a claim for intentional infliction of emotional distress upon which relief can be granted, the Court does not need to address the immunity issue at the present time. Put more simply, because Plaintiff has not alleged an actionable cause of action to begin with, an immunity defense to that cause of action is irrelevant.

**13.** The Court believes that Plaintiff has likewise failed to allege any facts that would support a cause of action under § 1983, § 1981 or Texas tort law against HISD. Moreover, the Court questions whether Plaintiff is contractually barred by the terms of the Settlement Agreement from bringing a Title IX claim against HISD at this time. However, because Defendants currently do not purport to seek a dismissal of any claims against HISD, the Court makes no ruling today with respect to those claims.