Rolisha **GOINS**, Corine Copeland, and Alma Lowe, Plaintiffs,

v.

**HITCHCOCK INDEPENDENT SCHOOL DISTRICT, et al. Defendants.**

**No. CIV. A. G–03–527.**

United States District Court, S.D. Texas, Galveston Division.

Oct. 15, 2003.

---

Ronald J. Merriweather, Attorney at Law, Houston, TX, for Plaintiffs.

Bridget R. Robinson, Walsh Anderson et al., Austin, TX, for Defendants.

## ORDER OF REMAND

KENT, District Judge.

This the fourth and final installment of a knock-down, drag-out dispute that has raged across the coastal plains like a veritable Hatfield–McCoy gun battle for the past six years.[1] The history of this case has been exhaustively recounted in a number of this Court's Orders, but for purposes of clarity, an abbreviated synopsis is included in this Order. Plaintiff Rolisha Goins ("Goins") filed her first lawsuit, G–98–159 ("Goins I"), against Hitchcock Independent School District ("HISD") on March 27, 1998, alleging intentional gender discrimination. The parties eventually settled the claims and signed a Settlement Agreement and Mutual Release of Claims. On August 16, 2001, Goins, Corine Copeland, and Alma Lowe (collectively "Plaintiffs") filed a second lawsuit against HISD, G–01–498 ("Goins II"), alleging violations of 20 U.S.C. § 1681 et seq. ("Title IX"), 42 U.S.C. § 1981, 42 U.S.C. § 1983, and 42 U.S.C. § 2000e ("Title VII"), as well as state-law fraud claims arising out of the settlement agreement entered in Goins I.

The Court granted Defendants' Partial Motion to Dismiss on March 20, 2002, dismissing all of Plaintiffs' federal claims with prejudice. See Goins v. Hitchcock I.S.D., 191 F.Supp.2d 860 (S.D.Tex.2002). On July 16, 2002, the Court granted HISD's Motion for Summary Judgment on all of Goins's claims. Final judgment was entered on July 17, 2002. The Order in Goins II was subsequently affirmed by the Fifth Circuit. On August 16, 2002, Plaintiffs again filed a complaint against HISD, G–02–590 ("Goins III"), alleging federal civil rights violations as well as various state-law claims, including fraud in the settlement agreement in Goins I. The Court's Order Dismissing Action G–02–590 for Lack of Subject Matter Jurisdiction issued on May 22, 2003. The Court concluded that Plaintiffs' federal claims were barred by res judicata and that no basis existed for federal subject matter jurisdiction over Plaintiffs' state-law claims. Accordingly, the Court dismissed the state-law claims without prejudice. An appeal in Goins III is currently pending before the Fifth Circuit.

On June 27, 2003, Plaintiffs filed this lawsuit in the District Court for the 10th Judicial District, Galveston County, Texas, against HISD and the following individuals, in their individual and official capacities: Josie M. Orr, Ricky Bond, Ron Meir, Doris Scurry–Kennedy, Pat Turner, Mark Morgan, Shawn Kadlecek, Rochelle Randle, Joe Allen, Jimmy Anderson, Ruth A. Kane, Bill Banks, Brenda Taylor, Ronnie Purl, Janice Braunsdorf, Ann Sanders, and Barbara Wilson ("Defendants"). Plaintiffs' Original Petition essentially reasserted the claims involved in their prior law-

---

1. The Court reminds the Plaintiffs that the Hatfields and the McCoys laid down their arms in 1891. On June 14th of this very year, family members signed a truce officially ending the legendary feud. The Court can only hope that, at some point, these parties are imbued with a similar desire to seek an amicable end to the endless acrimony demonstrated in this Dickensian series of litigation.

suits, including violations of federal civil rights laws, state-law fraud, and numerous violations of the Texas Penal Code and Texas Open Government Act. Maintaining that they were never properly served, Defendants removed the case, thus presenting the controversy to this Court for the fourth time as G–03–527 ("Goins IV"). Plaintiffs filed their First Amended Complaint, albeit without leave of the Court, on August 7, 2003, deleting all federal causes of action. Plaintiffs filed their Motion to Remand on August 25, 2003, asserting that the Court lacked subject matter jurisdiction, and Defendants timely responded.[2] Because the Court lacks subject matter jurisdiction over this case, it must **REMAND** for consideration by the Texas District Court.

## I. Jurisdiction

■ Absent an express provision to the contrary, a defendant may remove a state-court action to federal court only if the suit could have been filed originally in federal court. *See* 28 U.S.C. § 1441(a); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). The Defendants assert two bases for this Court's subject matter jurisdiction: first, that the Court can exercise federal question jurisdiction based on the existence of federal claims in Plaintiffs' complaint, *see* 28 U.S.C. § 1331; and second, that the Court may exercise jurisdiction under the All Writs Act. *See* 28 U.S.C. § 1651(a). Careful consideration of the parties' motions and a brief review of the previous iterations of this dispute reveal, however, that the Court lacks subject matter jurisdiction over the case. Accordingly, the Court must **REMAND** the case to the Texas District Court. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").[3]

## A. Federal Question Jurisdiction

■ Congress has provided the federal courts with jurisdiction over "all civil actions arising under the Constitution, laws, and treaties of the United States." 28 U.S.C. § 1331. Generally, the existence of federal question jurisdiction is governed by the well-pleaded complaint rule, which provides that "federal question jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar*, 482 U.S. at 392, 107 S.Ct. at 2429 (citing *Gully v. First Nat'l Bank*, 299 U.S. 109, 112–13, 57 S.Ct. 96, 97–98, 81 L.Ed. 70 (1936)). If

---

**2.** Defendants raise proper procedural concerns regarding the Plaintiffs' Motion to Remand, namely, that the Defendants were not properly served and that the Motion was signed by Plaintiff Rolisha Goins. The latter defect is not surprising given the level of animosity demonstrated in this case; however, it is inexplicable given that Goins has been represented by counsel of record for a number of years. But the Court notes that, despite these apparent procedural defects, Plaintiffs have attempted in good faith to do precisely what the Court asked them to do. The Court likewise endeavors to permit Plaintiffs to pursue whatever merits remain in the proper tribunal. Given the lack of subject matter jurisdiction, the Court need not consider the defects in Plaintiffs' Motion to Re-

mand. Rather the Court sua sponte acts to properly place the matter in state court. For the same reasons, the Court does not reach the merits of the Defendants' Motion to Quash Service of Process.

**3.** By remanding this case, the Court hopes to minimize expense and inconvenience to the parties. While an order remanding a case to state court is generally not reviewable, *see* 28 U.S.C. § 1447(d), the Court does not intend by this Order to undermine the parties' rights to a proper appeal. Rather, the Court hopes to streamline this dispute, which has already imposed heavy costs, in money and time, on both parties.

the plaintiff's well-pleaded complaint does not show that federal law creates the plaintiff's right of action, federal question jurisdiction may exist if "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 27–28, 103 S.Ct. 2841, 2856, 77 L.Ed.2d 420 (1983). Although the well-pleaded complaint rule generally directs the court's attention to the face of the complaint, the mere allegation of a federal cause of action does not necessarily confer federal question jurisdiction on the district court. *See John Corp. v. City of Houston,* 214 F.3d 573, 579 (5th Cir.2000) ("[I]n order to invoke a federal court's jurisdiction, claims cannot be obviously without merit or clearly foreclosed by the previous decisions of the United States Supreme Court." (citations and internal quotations omitted)); *see also* 13B Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction 2d § 3564, at 68 (1984) ("[A] federal court must dismiss for want of jurisdiction if the federal claim that is the basis for jurisdiction is obviously without merit or is wholly frivolous.").

■ Defendants' primary argument for federal question jurisdiction centers on the presence of federal civil rights claims on the face of Plaintiffs' Original Petition. Brief consideration of the claims reveals, however, that they are inadvertent at best and frivolous at worst. In *John Corp. v. City of Houston,* the Circuit found that the plaintiff's Eighth Amendment claim, which alleged that the city's demolition of an apartment building constituted cruel and unusual punishment, was frivolous because a confiscation of property was not "punishment," as required by the controlling interpretation of the Eight Amendment. *John Corp.,* 214 F.3d at 580 (citing, *Ingraham, v. Wright,* 430 U.S. 651, 97

S.Ct. 1401, 51 L.Ed.2d 711 (1977)). Because the claim was frivolous, the Court held that it did not provide a basis for subject matter jurisdiction. *Id.* The present case presents a somewhat novel twist on the issue, but it is nevertheless clear that Plaintiffs' federal claims are so lacking in merit as to provide no basis whatsoever for subject matter jurisdiction. Whereas the complaint in *John Corp.* was deemed frivolous because of its facial conflict with controlling precedent, the Plaintiffs' complaint now under consideration conflicts with no less than *two* prior Orders of this very Court. Even if it does not sink to the level of frivolity, it is abundantly clear that the claim has no merit whatsoever. Because Plaintiffs' Original Petition presents no colorable federal claims on its face, this Court lacks subject matter jurisdiction under § 1331.

■ In fact, Plaintiffs' federal claims were dismissed with prejudice in Goins II. Such a defense does not, however, provide this Court with subject matter jurisdiction. On the contrary, the Supreme Court rejected this proposition in *Rivet v. Regions Bank of Louisiana,* 522 U.S. 470, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998). In *Rivet,* the Supreme Court considered the question whether a defense of claim preclusion based on a prior federal judgment created a proper basis for removal of a subsequent state-court action to federal court. *See id.* at 472, 118 S.Ct. at 923. Distinguishing claim preclusion from the doctrine of complete preemption, the Court noted that "[t]he prior federal judgment does not transform the plaintiff's state-law claims into federal claims but rather extinguishes them altogether." *Id.* at 476, 118 S.Ct. at 926. The Court concluded: "In sum, claim preclusion by reason of a prior federal judgment is a defensive plea that provides no basis for removal under § 1441(b). Such a defense is properly made in the

state proceedings ...." *Id.* at 478, 118 S.Ct. at 926; *see also* 28 U.S.C. § 1441(b). Accordingly, the prior resolution of Plaintiffs' federal civil rights claims by this Court provides no basis for removal, and the Defendants must assert any res judicata defense in state court.

### 2. State–Law Claims

■ Defendants argue in the alternative that, because the Plaintiffs' claims necessarily depend on the validity of three prior orders of this Court, the claims present a federal question under § 1331. *See* 28 U.S.C. § 1331. As the Court understands the argument, Defendants contend that, because Plaintiffs' state-law claims relate to the settlement entered into during an earlier case in federal court, this Court has ancillary jurisdiction to adjudicate claims arising out of, or related to, the settlement. This argument has some superficial appeal, but controlling authority dictates that the mere existence of a prior settlement in federal court does not, by itself, provide subject matter jurisdiction—and therefore provides no basis for removal jurisdiction—over subsequent claims arising under state law, even if they are related to the federal-court settlement.

In *Kokkonen v. Guardian Life Insurance Co.*, 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994), the Supreme Court held that an action to enforce a settlement agreement in a prior federal-court suit required an independent basis of jurisdiction. *Kokkonen* arose from a diversity suit for breach of an agency agreement. After the trial, the parties entered into an oral settlement agreement. *Id.* at 376, 114 S.Ct. 1673. The parties recited the terms of the settlement agreement into the record, but the District Court's Stipulation and Order dismissing the suit neither mentioned nor reserved jurisdiction over the settlement. *Id.* at 377, 114 S.Ct. 1673. Shortly there-after, a dispute arose concerning the parties' obligations under the settlement agreement, and the respondent insurance company moved in the District Court to enforce the agreement. The petitioner argued that the court lacked subject matter jurisdiction over the enforcement claim, but the District Court asserted its "inherent power" and entered an order enforcing the agreement, which the Ninth Circuit affirmed. *Id.*

The Supreme Court disagreed, holding that the District Court lacked subject matter jurisdiction over the enforcement suit. The Court recognized that ancillary jurisdiction had traditionally been asserted for two separate purposes: "(1) to permit disposition by a single court of claims that are ... factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Id.* at 379–80, 114 S.Ct. 1673 (citations omitted). As to the first type of ancillary jurisdiction, the Court maintained that the original claim and the claim for breach of the settlement agreement "ha[d] nothing to do with each other." *Id.* at 380, 114 S.Ct. 1673. The Court concluded that the concept of limited federal jurisdiction did not support "ancillary jurisdiction over any agreement that has as part of its consideration the dismissal of a case before a federal court." *Id.*

Regarding the second head of ancillary jurisdiction, the *Kokkonen* Court recognized that a district court might retain jurisdiction over a settlement agreement, either by incorporating the terms of the settlement agreement into the court's order or specifically retaining jurisdiction over the settlement contract. *See id.* at 381–82, 114 S.Ct. 1673. But the Court made clear that when the federal court's order does nothing more than dismiss the case, the alleged violation of the settlement

agreement does not constitute a violation of the court's order. Furthermore, "[t]he judge's mere awareness and approval of the terms of the settlement agreement do not suffice to make them part of his order." *Id.* at 381, 114 S.Ct. 1673. Accordingly, the Supreme Court held, "Enforcement of the settlement agreement, . . . whether through award of damages or decree of specific performance, is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction." *Id.* at 378, 114 S.Ct. 1673.

■ The essence of Plaintiffs' state-law claims—to the extent that they suggest federal jurisdiction—is that Defendants breached the settlement agreement in Goins I. *See* Plaintiffs' Original Petition ¶ 92.[4] Plaintiffs seek enforcement of the settlement agreement through an award of damages and injunctive relief. Controlling Fifth Circuit authority indicates that the issue of ancillary enforcement of a settlement agreement is properly analyzed under the second head of ancillary jurisdiction recognized in *Kokkonen*. *See Hospitality House, Inc. v. Gilbert*, 298 F.3d 424 (5th Cir.2002) (considering whether an action to enforce a settlement agreement came within a federal court's power "to manage its proceedings, vindicate its authority, and effectuate its decrees" (quot-

ing *Kokkonen*, 511 U.S. at 381, 114 S.Ct. at 1673)).

As an initial matter, the power here asserted differs from the traditional "inherent" powers of the federal courts, which include the power to compel payment of attorneys' fees, *see id.* (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)), and the contempt power, *see id.* (citing *United States v. Hudson*, 11 U.S. (7 Cranch) 32, 34, 3 L.Ed. 259 (1812)). But the "inherent power" argument fails for the simple reason that, because the terms of the settlement agreement were not incorporated into the Court's Order in Goins I, violation of the settlement does not constitute a violation of the Court's Order. Without an independent basis for federal jurisdiction, the Court has no power over this dispute.

■ The mere causal connection between the settlement agreement and the dismissal in Goins I does not support subject matter jurisdiction, ancillary or otherwise. Nor does the fact that the settlement agreement might require compliance with federal law distinguish the present case from *Kokkonen*. In *Hospitality House*, several companies sued state health officials for failure to comply with a settlement agreement, which the parties

---

4. Defendants argue that Plaintiffs' First Amended Complaint challenges the *validity* of the settlement agreement in Goins I. *See* Defendants' Motion to Strike Plaintiffs' Motion to Remand, Or, Alternatively, Response in Opposition to Plaintiffs' Motion to Remand at 4. While this is true, the Court never granted leave to file an amended complaint, a fact that has not escaped Defendants' attention. *See id.* at 3 (noting that Plaintiffs cannot attempt to deprive the Court of jurisdiction by amending their complaint without leave). Defendants simply cannot have it both ways. Because the Court did not grant leave to amend, Plaintiffs' First Amended Complaint is not a live pleading.

· To be sure, Plaintiffs' purported First Amended Complaint raises a compelling issue. By altering the substance of their claim so as to raise a challenge to the *validity* of the settlement agreement (as opposed to Defendants' compliance therewith), Plaintiffs appear to make every effort to plead themselves into this Court's jurisdiction, a course of action fundamentally at odds with their Motion to Remand. However, the jurisdictional dilemma raised by this curious maneuver is not properly before the Court, leaving the Court free to remand.

reached in an earlier lawsuit to compel the state health officials to satisfy their regulatory obligations under federal law. *See Hospitality House*, 298 F.3d at 427. The settlement agreement specifically required the state officials to set reimbursement rates for health-care providers "in conformity with applicable State and Federal laws, regulations and quality and safety standards." *Id.* at 428. Notwithstanding the settlement agreement's incorporation of federal law, the Circuit concluded that, without proper incorporation into the dismissal order, the district court lacked subject matter jurisdiction over the settlement agreement. *See id.* at 434 (concluding that, without "another independent basis of federal jurisdiction, any action to enforce the Agreement is 'for state courts'" (quoting *Kokkonen*, 511 U.S. at 382, 114 S.Ct. 1673, 128 L.Ed.2d 391)). *Hospitality House* thus demonstrates that the *Kokkonen* standard applies equally to cases in which settlement agreements incorporate or reflect principles of federal law, something that is especially likely in cases within the federal question jurisdiction. Because this Court did not incorporate the parties settlement agreement or otherwise retain jurisdiction over the dispute in Goins I, Plaintiffs' Original Petition provides no basis for federal subject matter jurisdiction. Accordingly, the Court must **REMAND** the case to the Texas District Court.

*B. Jurisdiction Under the All Writs Act*

▮▮▮▮ Defendants maintain that, even in the absence of federal question jurisdiction under § 1331, the All Writs Act provides the Court with subject matter jurisdiction, thus satisfying the threshold requirement of § 1441. The All Writs Act provides: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions

and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The Supreme Court's decisions leave no doubt that "statutory procedures for removal are to be strictly construed." *Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 32, 123 S.Ct. 366, 369, 154 L.Ed.2d 368 (2002) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09, 61 S.Ct. 868, 85 L.Ed. 1214 (1941)). In *Syngenta*, the Court held, "Because the All Writs Act does not confer jurisdiction on the federal courts, it cannot confer the original jurisdiction required to support removal pursuant to § 1441." *Id.* at 33, 123 S.Ct. at 370. Nor can Defendants rely on a combination of the All Writs Act and ancillary jurisdiction. "Section 1441 requires that a federal court have original jurisdiction over an action in order for it to be removed from a state court. The All Writs Act, alone or in combination with the existence of ancillary jurisdiction in a federal court, is not a substitute for that requirement." *Id.* at 34, 123 S.Ct. 371, 154 L.Ed.2d 377. In the light of *Syngenta*, Defendants' argument for removal under the All Writs Act is a nonstarter. Because the All Writs Act does not provide a basis for removal jurisdiction, the Court must **REMAND** the case to the Texas District Court.

II. Conclusion.

The Court cannot escape the conclusion that Plaintiff Rolisha Goins has taken her former school's mascot—the bulldog—literally. She has taken this matter in her bit and refuses to let it go until it is literally knocked from her jaws. Because this Court retains no jurisdiction over this dispute, it falls to the Texas District Court to proceed, rolled-up newspaper in hand, to whatever merits remain. For the above-stated reasons, the Court hereby **REMANDS** this case to the District Court

for the 10th Judicial District, Galveston County, Texas. Each Party is to bear its own taxable costs and expenses incurred herein to date.

**IT IS SO ORDERED.**