**Diana AUCOIN**

v.

**Milton KENNEDY, et al.**

**No. CIV.A. 03–1649.**

United States District Court,
E.D. Louisiana.

July 26, 2004.

Karen Delcambre McCarthy, Lanny R. Zatzkis, Zatzkis, McCarthy & Associates, LLC, New Orleans, for Diana Aucoin plaintiff.

Henry D.H. Olinde, Jr., Faye Dysart Morrison, Scott Edward Mercer, Simoneaux Carleton Dunlap & Olinde, LLC, Baton Rouge, Vincent J. Lobello, Vincent J. Lobello, Attorney at Law, Slidell, Timothy George Schafer, Rachel Smith Kellogg, Schafer & Schafer, New Orleans, for Milton Kennedy, in his individual and official

capacity, Steve Farris, in his individual and official capacity, St. Tammany Parish Fire Protection District No. 1, American Alternative Insurance Company, incorrectly sued as Alternative American Insurance Company, defendants.

### ORDER AND REASONS

LEMMON, District Judge.

Defendants American Alternative Insurance Corporation, Milton Kennedy, Steve Farris, and St. Tammany Fire Protection District No. 1 have moved to dismiss plaintiff Diana Aucoin's suit under Rules 12(b)(1) and 12(b)(6) (Documents 11, 13 and 15). **IT IS HEREBY ORDERED**:

1) Defendants' motions to dismiss Aucoin's claims under the Americans with Disabilities Act are **GRANTED**.

2) Defendants' motions to dismiss Aucoin's claims under the Age Discrimination in Employment Act (ADEA) against the Fire District that occurred prior to September 21, 2001, Aucoin's ADEA claims against Kennedy and Farris individually, and Aucoin's claim for punitive damages under the ADEA are **GRANTED**. Defendants' motions to dismiss Aucoin's claims against the Fire District under the ADEA arising on or after September 21, 2001 for failure to exhaust administrative remedies are **DENIED**.

3) Defendants' motions to dismiss Aucoin's claim for punitive damages under Title VII, all Title VII claims arising prior to September 21, 2001, and all Title VII claims outside of the scope of Aucoin's EEOC Charges are **GRANTED**. Aucoin's Title VII claim in this case is limited to the allegation that Aucoin "performed work in the position of Administrative Assistant requiring equal skill, effort, and responsibility under similar working conditions, and that she was paid less than male and/or younger males in comparable positions."

4) Defendants' motions to dismiss Aucoin's claim for punitive damages under the Equal Pay Act (EPA) and her claims against Kennedy and Farris under the EPA are **GRANTED**.

5) Defendants' motions to dismiss Aucoin's claim for gender discrimination and age discrimination under 42 U.S.C. § 1983 are **DENIED**. Defendants' motions to dismiss Aucoin's § 1983 claims for disability discrimination, punitive damages, due process, and retaliation (as to Kennedy and Farris), as well as all § 1983 claims arising prior to June 10, 2002, are **GRANTED**.

6) Defendants' motions to dismiss Aucoin's claim of intentional misrepresentation under Louisiana law is **DENIED**. Defendants' motions to dismiss Aucoin's claim of negligent misrepresentation under Louisiana law is **GRANTED**.

7) Defendants' motions to dismiss (1) Aucoin's claim for punitive damages under Louisiana antidiscrimination laws, and (2) Aucoin's discrimination claims under Louisiana antidiscrimination law that are outside the scope of her EEOC complaint are **GRANTED**. Aucoin's state antidiscrimination law claim in this case is limited to the allegation that Aucoin "performed work in the position of Administrative Assistant requiring equal skill, effort, and responsibility under similar working conditions, and that she was paid less than male and/or younger males in comparable positions."

8) Defendants' motions to dismiss Aucoin's conspiracy claim under 42 U.S.C. § 1985(3) is **GRANTED**. Defendants' motions to dismiss Aucoin's conspiracy claim under Louisiana law are **DENIED**.

9) Defendants' motions to dismiss Aucoin's invasion of privacy claim under Louisiana law are **GRANTED**.

## A. Background.

### 1. Aucoin's allegations.

Diana Aucoin began working for the St. Tammany Fire Protection District No. 1 in 1989 as a bookkeeper. Aucoin alleges that the Fire District discriminated against her based on sex and/or age because Charles Abney, Gary Hathorn, and Cheryl Gross, younger individuals with fewer years of experience, were given comparatively higher rates of pay. Aucoin further alleges that she was transferred to a less desirable job location, along with other older workers. Aucoin alleges that defendants initiated a criminal investigation of her activities in connection with a salary increase, although they did not investigate other individuals involved in the increase who were younger; and that she was asked to repay allegedly overpaid salary even though Abney and Gross were not asked to do so. Aucoin claims she was singled out to assist Kennedy in his campaign against two fire commissioners, even though younger and male individuals were not forced to help him. Aucoin went on sick leave on January 9, 2003, and has not worked since that date. She alleges that while on sick leave, defendants have treated her differently than other male workers who have taken sick leave. Additionally, she alleges that defendants have retaliated against her for assisting others who have discrimination claims against defendants by placing her on "house arrest" during her convalescence, and by suing her in connection with her salary increase.

### 2. Allegations before the Equal Employment Opportunity Commission.

On July 18, 2002, Aucoin submitted a Charge of Discrimination to the Equal Employment Opportunity Commission (EEOC), charging that defendants had discriminated against her based on sex and had violated the Equal Pay Act. On December 20, 2002, Aucoin wrote a letter to John Berendsen at the EEOC stating that she wished to amend her Charge to include age discrimination. On June 9, 2003, she wrote to the EEOC to amend her claim also "to include disability based discrimination and harassment." On June 11, 2003, the EEOC issued a Notice of Right to Sue letter "under Title VII and/or the [Americans with Disabilities Act]."

On February 12, 2004, Aucoin submitted an additional Charge of Discrimination to the EEOC, alleging defendants had discriminated against her based on age and disability. That same day, the EEOC issued a Notice of Right to Sue letter "under Title VII and/or the ADA" as well as the Age Discrimination in Employment Act.[1]

### 3. Aucoin's suit.

Aucoin filed suit on June 10, 2003 against the Fire District; Steve Farris, its Chairman; Milton Kennedy, a fire chief employed by the Fire District; and their insurer. Aucoin alleges the following claims: (1) defendants violated Title VII, the ADA, the ADEA, and 42 U.S.C. § 1983 by discriminating against her on the basis of age, sex, and disability; (2) defendants intentionally and/or negligently misrepresented the Fire District's sick leave policy and their intent to correct certain salary disparities; (3) defendants violated Louisiana antidiscrimination laws;

---

**1.** On March 11, 2004, EEOC Acting Director Manuel Zurita wrote to counsel for defendant explaining that the EEOC had "recognized a need to correct the administrative deficiency," and processed the February 11, 2004 charge as an amendment to the earlier charge.

(4) defendants conspired against her; and (5) defendants defamed her and invaded her privacy. Defendants have moved to dismiss Aucoin's claims under Rules 12(b)(1) and 12(b)(6).

## B. Analysis.

### 1. Count One.

#### a. Claims under the Americans with Disabilities Act.

Defendants argue that Aucoin's claim under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, should be dismissed under Rule 12(b)(6) because Aucoin has not alleged that she has a cognizable ADA disability.

The ADA provides that the term "disability" means, "with respect to an individual," either (1) "a physical or mental impairment that substantially limits one or more of the major life activities of such individual;" (2) a "record of such an impairment," or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102. Plaintiff's complaint does not specifically allege the nature of her disability, but generally alleges that defendants subjected her to continual harassment and excessive stress, which caused her to go on extended sick leave.[2] Aucoin's opposition memorandum states only that defendants' harassment caused her to suffer from "an anxiety reaction" that her physician attributed to "job-related stress." [3]

The Fifth Circuit addressed a similar claim in *Aldrup v. Caldera*, 274 F.3d 282 (5th Cir.2001). The *Aldrup* plaintiff alleged that he suffered from depression caused by the stress and anxiety of having to work with certain of defendants' employees, and that his condition constituted a disability under the ADA. The Fifth Circuit affirmed the district court's grant of summary judgment to defendant, noting

that "Aldrup alleges that he suffers from the disability of depression caused by 'the stress and anxiety of having to work with certain employees at the [Houston Station].' This claim, if supported by the record, would merely tend to show that he was unable to perform any job at one specific location, and is not evidence of Aldrup's general inability to perform a broad class of jobs." *Id.* at 286–87. In *Wheelock v. Philip Morris, USA, Inc.*, No. 95–0999, 1997 WL 45292 (E.D.La. Feb. 5, 1997), plaintiff also argued that defendant's harassment caused job-related stress and depression that constituted a disability under the ADA. The court disagreed, noting that "an inability to work at a particular position does not render an individual 'disabled' under the ADA. This situational type of depression does not interfere with plaintiff caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, or working at another job." *Id.* at 1997 WL 45292 *7.

In analyzing a Rule 12(b)(6) motion, the court "accepts as true all well-pleaded facts, and view them in the light most favorable to the non-moving party." *Word of Faith World Outreach Center Church, Inc. v. Sawyer*, 90 F.3d 118, 121 (5th Cir.1996), *cert. denied*, 520 U.S. 1117, 117 S.Ct. 1248, 137 L.Ed.2d 329 (1997). "Unless it appears 'beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief,' the Complaint should not be dismissed for failure to state a claim, and leave to amend should be liberally granted." *Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir.1993). Additionally, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Id.*

---

**2.** *See* First Supplemental and Amending Complaint ("Complaint") at ¶¶ LXII.—LXIV.

**3.** Document 23 at p. 5.

■ Aucoin's Complaint does not allege any facts supporting a disability under the ADA. Like the plaintiffs in *Aldrup* and *Wheelock,* Aucoin alleges only that she suffers from stress and anxiety caused by having to work with the individuals at the Fire District who are harassing her, not that she suffers from generalized anxiety, stress, and depression that precludes her work at other jobs. Aucoin's opposition to defendants' motion focuses solely on whether she exhausted her administrative remedies with respect to her ADA claim, and does not address whether her condition constitutes an ADA disability. Accepting as true all of the well-pleaded facts in Aucoin's Complaint, and viewing them in the light most favorable to the Aucoin, the court finds that she has not alleged facts demonstrating that she has a disability under the ADA, and accordingly defendants' motion to dismiss Aucoin's ADA claim is granted.[4]

### b. Claims under the Age Discrimination in Employment Act.

#### (1) Exhaustion of administrative remedies.

■■ Defendants argue that Aucoin's claims under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.,* should be dismissed under Rule 12(b)(1)[5] because Aucoin failed to exhaust her administrative remedies. In evaluating a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, a court may consider (1) the complaint alone, (2) the complaint supplemented by undisputed facts, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Den Norske Stats Oljeselskap As v. HeereMac Vof,* 241 F.3d 420, 424 (5th Cir.2001), *cert. denied,* 534 U.S. 1127, 122 S.Ct. 1059, 151 L.Ed.2d 967 (2002). Uncontroverted allegations of the complaint must be taken as true. *Id.* The burden of proof for a Rule 12(b)(1) motion rests on the party asserting that jurisdiction exists. *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir.2001), *cert. denied,* 536 U.S. 960, 122 S.Ct. 2665, 153 L.Ed.2d 839 (2002).

■ The ADEA requires that a plaintiff institute administrative proceedings with the EEOC prior to filing suit. *See* 29 U.S.C. § 626(d). The record reflects that Aucoin's ADEA claim was not included in her original Charge of Discrimination, but that on December 20, 2002 she amended her Charge to include a claim under the ADEA. Aucoin's February 12, 2004 Charge of Discrimination stated that she had been discriminated against because of her age, and a Notice of Right to Sue letter was issued to her by the EEOC that same day. The court finds that Aucoin exhausted her administrative remedies with regard to her ADEA claim.

#### (2) ADEA claims arising prior to September 21, 2001.

■ Aucoin's original Charge of Discrimination as to sex and equal pay was

---

**4.** Because of the ruling on this issue it is unnecessary to reach the issue of whether Aucoin exhausted her administrative remedies under the ADA.

**5.** The Fifth Circuit has stated that if a plaintiff fails to exhaust her administrative remedies, the court "is deprived of jurisdiction over the case." *Randel v. United States Department of the Navy,* 157 F.3d 392, 395 (5th Cir.1998). Accordingly, "exhaustion of administrative remedies raises the issue of the Court's subject matter jurisdiction which is properly considered under Rule 12(b)(1)." *Jackson v. Westin Galleria Hotel,* No. 01–2294, 2002 WL 484673, at *2 n. 1 (N.D.Tex. March 27, 2002); *see also Lazdowski v. Potter,* No. 503–118, 2004 WL 1490059, at *9 (N.D.Tex. July 1, 2004) (dismissing Title VII claims for lack of subject matter jurisdiction under Rule 12(b)(1) because plaintiff failed to exhaust administrative remedies).

filed on July 18, 2002. 42 U.S.C. § 2000e–5(e)(1) provides that in a referral state such as Louisiana, a Title VII charge "shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred," and the ADEA incorporates this limitations period. *See* 29 U.S.C. § 626(d). Defendants argue that any claims of discrimination antedating September 21, 2001, three hundred days prior to the July 18, 2002 charge, should be dismissed. Aucoin does not oppose this motion. Therefore, plaintiff's ADEA claims prior to September 21, 2001 are dismissed.

### (3) ADEA claims against Kennedy and Farris.

■ Defendants argue that Aucoin's ADEA claims against Kennedy and Farris should be dismissed because the ADEA does not impose individual liability. The ADEA "provides no basis for individual liability for supervisory employees,"[6] and Aucoin does not oppose dismissal of her ADEA claims against the individual defendants.[7] Accordingly, defendants' motion to dismiss Aucoin's ADEA claims against Kennedy and Farris is granted.

### (4) Punitive damages under the ADEA.

Aucoin's Complaint alleges that she is entitled to punitive damages, without specifying the source of any such damages.[8] Defendants argue that any claim for punitive damages under the ADEA should be dismissed.

■ The Fifth Circuit has held that "[u]nlike Title VII, the ADEA does not provide for punitive damages. Instead, the ADEA provides for 'liquidated dam-

ages' if the violation was willful." *Smith v. Berry Co.*, 165 F.3d 390, 395 (5th Cir.1999). Aucoin's opposition to defendants' motions provides no statutory or jurisprudential support for an award of punitive damages under the ADEA. Accordingly, defendants' motions to dismiss Aucoin's claim for punitive damages under the ADEA is granted.

### c. Title VII claims.

### (1) Punitive damages under Title VII.

■ Defendants argue that any claim for punitive damages under Title VII asserted by Aucoin against the Fire District should be dismissed because punitive damages are not available under Title VII against a political subdivision or government entity.[9] *See Chaney v. New Orleans Public Facility Management, Inc.*, No. 96–4023, 1997 WL 685351, at *1 (E.D.La. Nov. 4, 1997) ("Congress has clearly provided that punitive damages are not available from a governmental entity under Title VII."). Aucoin provides no statutory or jurisprudential support authorizing a punitive award against the Fire District under Title VII. Accordingly, Aucoin's claim for punitive damages against the Fire District under Title VII is dismissed.

### (2) Title VII claims arising prior to September 21, 2001.

Because § 2000e–5(e)(1) requires that a plaintiff file an EEOC charge within 300 days of the alleged unlawful practice, defendants argue that all of Aucoin's Title VII claims arising prior to September 21, 2001 should be dismissed. Aucoin has not opposed this aspect of defendants' motions. Accordingly, all of Aucoin's Title VII claims arising prior to September 21, 2001 are dismissed.

---

**6.** *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 686 (5th Cir.2001).

**7.** Document 23 at pp. 19–20.

**8.** Complaint at ¶ LXXVI.

**9.** Aucoin has not asserted a Title VII claim against the individual defendants.

**(3) Title VII claims outside the scope of Aucoin's EEOC Charges.**

Defendants argue that Aucoin's Title VII claims should be limited to the claims enunciated in her Charges of Discrimination.

The record reflects that Aucoin's July 18, 2002 Charge of Discrimination alleged that she was "subjected to harassment" by Fire District Commissioners Robert White and Richard James beginning in April 2002, consisting of "comments that all secretaries make too much money, that they need to get rid of me, asking other employees personal information as to whether or not I had bought a new car, etc.;" that she was paid less than the individual she replaced; and that defendants violated the Equal Pay Act. She checked boxes on the form indicating sex discrimination and "Other: Equal Pay." The answers to the "Charge Questionnaire" generally reference the factual allegations, noting "Pay was not correct under EPA. Harassed by two new commissioner[s] to the point of needing medical attention (see letter to Chief)." The letter referred to consists of numerous general complaints about harassment directed at Aucoin, but does not make any specific claims of gender or age discrimination. In the "Supplemental Intake Questionnaire," Aucoin responded to the question "specific action(s) . . . your employer [took] against you" with the following: "(See letter) Never gave my raise in 2000 + hostile & harassing work environment."

Aucoin's December 20, 2002 letter states "age was an issue with this Fire District," noting that the Fire District "wishes to get rid of 'older' workers if possible;" and that "when the 'new' chief took over I was sent to the Training Academy with other employees over 40 years old."

Aucoin wrote additional letters to the EEOC on April 2, 2003 and June 9, 2003. The April 2, 2003 correspondence provided further explanation for her Equal Pay Act claim, but contained few additional facts supporting her allegations of age and sex discrimination. The letter stated that the Fire Department was "male dominated," and that Kennedy, who was 36 years old, was the oldest worker. The June 9, 2003 correspondence stated that she "would like to amend my EEOC claim to include disability based discrimination and harassment," without specifying any acts of disability discrimination committed by defendants.

Aucoin's February 12, 2004 Charge of Discrimination alleged nearly identical facts to her July 18, 2002 Charge, but concluded that "I believe that I was discriminated against because of my age, 58 in violation of the Age Discrimination in Employment Act. Also because of my disability." She checked boxes indicating discrimination based on age and disability. The record does not contain any additional materials supporting the February 12, 2004 charge.

Aucoin's complaint is not limited to the allegations in the two EEOC charges and related EEOC documentation. Aucoin's complaint generally alleges that defendants engaged in numerous acts of gender, age, and disability discrimination, and the facts asserted to support those claims, as well as the specific allegedly discriminatory acts, are far more extensive than those she disclosed to the EEOC. Among the many allegations of discriminatory conduct in Aucoin's complaint that are absent from her EEOC charges are that her salary and salary increases were impermissibly low in relation to that of Charles Abney, Gary Hathorn, and Cheryl Gross; that her job performance was investigated, while the performance of others was not; that she was forced to repay an allegedly unauthorized salary increase, though Gross and Abney were not; that she was told to "write a statement against" two Fire Com-

missioners who Kennedy wished to "get rid of," while younger individuals were not; and that she was forced to meet with Hathorn shortly after being released from the hospital to sign a letter placing her in the middle of a dispute between Fire Department Board members, while other male and younger employees were not made to do so.

*Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir.1970) is the seminal case addressing the relationship between a plaintiff's charges to the EEOC and her subsequent lawsuit. The *Sanchez* defendant argued that all of the facts in a plaintiff's judicial complaint must have a direct counterpart in the discrimination charges submitted to the EEOC. The court rejected this argument, and declined "to exact such specific articulation and minuscule particularity in the context of Title VII:"

[T]he specific words of the charge need not presage with literary exactitude the judicial pleadings which may follow.

As a general proposition, it is well established that "the scope of an EEOC complaint should not be strictly interpreted." Such a generalization, however, does not answer the more precise question of what standard is to be utilized in measuring the proper scope of a complaint. This circuit has never before considered this precise question. At least one district court in this circuit has addressed itself to the question, however, and in our judgment it responded to the question by giving the correct answer. In *King v. Georgia Power Co.*, Judge Smith held that the allegations in a judicial complaint filed pursuant to Title VII "may encompass any kinds of discrimination like or related to allega-

tions contained in the charge and growing out of such allegations during the pendency of the case before the Commission." In other words, the "scope" of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.

*Id.* at 465–66; *see also Vuyanich v. Republic National Bank of Dallas*, 723 F.2d 1195, 1201 (5th Cir.) (noting that *Sanchez* promulgated a "reasonable expectation rule" which "requires that the scope of the allegations made in a judicial complaint be 'like or related' to allegations made in the EEOC charge."), *cert. denied*, 469 U.S. 1073, 105 S.Ct. 567, 83 L.Ed.2d 507 (1984).

■ Numerous courts have dismissed Title VII claims that were not the like or related to the plaintiff's EEOC charge and related EEOC investigation. A plaintiff may not circumvent the EEOC filing requirements by raising only a few claims in her EEOC filings, and later suing over every claim arising out of her employment. In *Otokunrin v. MBNA Technology, Inc.*, No. 03–1509, 2004 WL 833599 (N.D.Tex. April 16, 2004), plaintiff filed a charge of discrimination alleging a claim of race discrimination in denying her promotions and a claim of retaliation. Plaintiff later sued defendant, adding claims that defendant demoted her due to race, discriminated against her by allowing a hostile work environment to exist, denied her educational opportunities, and engaged in class-wide discrimination. The court dismissed these additional allegations as outside the scope of the plaintiff's EEOC charge, noting that "The charge clearly did not provide MBNA with any notice of these claims." *Id.* at 2004 WL 833599 *5.[10]

■ Accordingly, limiting the scope of Aucoin's claims in this case to those arising

10. *See also, e.g., Glover v. United States*, No. 01–3813, 2003 WL 1338732, at *5 (E.D.La. March 14, 2003) (dismissing plaintiff's hostile work environment claim because such claim

was never submitted to EEOC), *aff'd without opinion*, 85 Fed.Appx. 402, 2004 WL 120518 (5th Cir.2004); *Hyatt v. CNG Producing Co.*,

after September 21, 2001 that are like or related to the allegations Aucoin made in her EEOC charges and growing out of such charges, the court finds that Aucoin's Title VII claim is limited to the allegation that Aucoin "performed work in the position of Administrative Assistant requiring equal skill, effort, and responsibility under similar working conditions, and that she was paid less than male and/or younger males in comparable positions."[11] All of Aucoin's other Title VII claims are dismissed.

### d. Equal Pay Act claims.

#### (1) Punitive damages under the Equal Pay Act.

■ Defendants argue that because punitive damages are not available under the Equal Pay Act (EPA), any claim for punitive damages based on the EPA should be dismissed. Although the EPA authorizes an award of liquidated damages "in an additional equal amount" to unpaid wages,[12] it contains no other provision authorizing a punitive award. *Forsberg v. Pacific Northwest Bell Telephone Co.*, 623 F.Supp. 117, 126 (D.Or.1985), *aff'd on other grounds*, 840 F.2d 1409 (9th Cir.1988);

*Saller v. GAB Business Services, Inc.*, No. 84–237, 1985 WL 5142, at *3 (D. Conn. April 25, 1985). Aucoin's opposition memorandum cites no statutory or jurisprudential support authorizing an award of punitive damages apart from the EPA's liquidated damages provision. Accordingly, defendants' motion to dismiss Aucoin's claim for punitive damages under the EPA is granted.

#### (2) Liability of the individual defendants under the EPA.

■ EPA liability is limited to "employers," who are defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. 203(d). Defendants argue that the EPA does not impose individual liability, and Aucoin does not oppose dismissal of the EPA claims against the individual defendants. The EPA claims against the individual defendants are therefore dismissed.

### e. Claims under 42 U.S.C. § 1983.

#### (1). Gender discrimination.

■ Relying on *Jackson v. City of Atlanta*, 73 F.3d 60 (5th Cir.), *cert. denied*,

---

No. 91–4654, 1992 WL 329654, at *3 (E.D.La. Nov. 3, 1992) ("To read into plaintiff's EEOC charge every allegation made in plaintiff's complaint would effectively rule out of existence the longstanding, and unchallenged, statutory requirement that than EEOC charge be a condition precedent to the bringing of a civil action under Title VII or the ADEA. If plaintiff's argument is accepted, a disgruntled employee could raise with the Commission single charge of discrimination in one aspect of the employment relationship and then bring into court allegations of discrimination in every aspect of the employment relationship.").

11. Complaint at ¶ LXVI. One of Aucoin's claims is that she "was subjected to retaliation after she was perceived as cooperating with others asserting Title VII claims against the Fire District, including being subjected to

virtual house arrest and being sued for activities for which she was not responsible within a month of the filing of this suit." Complaint at ¶ LXV. It is unnecessary for a plaintiff to exhaust her remedies prior to suing on a retaliation claim growing out of an earlier charge because "the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court." *Gupta v. East Texas State University*, 654 F.2d 411, 414 (5th Cir.1981). Because Aucoin alleges that defendants retaliated against her as a result of their belief that she assisted others in asserting their own Title VII claims, her retaliation allegations do not grow out of her earlier EEOC charge, and she was required to bring such a claim to the EEOC prior to filing suit.

12. 29 U.S.C. § 216(b).

519 U.S. 818, 117 S.Ct. 70, 136 L.Ed.2d 30 (1996), defendants argue that Aucoin's gender discrimination claims under 42 U.S.C. § 1983 should be dismissed under Rule 12(b)(6) because Title VII provides the exclusive remedy for discrimination claims. *See id.* at 62 ("[D]efendants contend that allegations of discriminatory treatment in connection with public employment that form the basis of a Title VII claim cannot form the basis of a second, separate claim under § 1983 as well. We agree."). However, in *Southard v. Texas Board of Criminal Justice,* 114 F.3d 539 (5th Cir.1997), the court of appeals declined to follow *Jackson* and held that eight plaintiffs alleging that their supervisor had sexually harassed them and subjected them to a hostile work environment could bring both a Title VII claim and a § 1983 claim based upon the same facts. *See id.* at 550 ("The circuits addressing the issue have allowed plaintiffs suing their public employers for sexual harassment and sex discrimination to assert claims under both Title VII and section 1983. Plaintiffs' allegations of sex discrimination and sexual misconduct assert claims under sections 1983 and 1985(3) that are not preempted by Title VII."). Lower courts in the wake of *Jackson* and *Southard* have adopted the reasoning of *Southard,* the more recent pronouncement of the Fifth Circuit, and the court denies defendants' motion based on the holding of that case.[13]

■ The individual defendants also argue that all of Aucoin's § 1983 claims against them should be dismissed because they were not her employers. Defendants cite no support for their argument that individuals may not be liable as a matter of law under § 1983 for acts of discrimination, and several cases have recognized individual liability in similar circumstances. *E.g., Southard,* 114 F.3d at 554–555 (discussing individual liability under § 1983 for acts of sex discrimination and retaliation). The individual defendants' motion to dismiss Aucoin's § 1983 claims on this basis is denied.

**(2) Age discrimination.**

■ In *Lafleur v. Texas Department of Health,* 126 F.3d 758 (5th Cir. 1997) (*per curiam* ), the Fifth Circuit held that "where a plaintiff asserts a claim of age discrimination under § 1983 and where the facts alleged will not independently support a § 1983 claim, the plaintiff's age discrimination claim is preempted by the ADEA." *Id.* at 760. Aucoin has alleged constitutional violations based on defendants' unjustified failure to pay her at the same rate as younger coworkers, and discriminating against her based on her age in failing to increase her salary to reflect her seniority. Accepting as true all of the well-pleaded facts in Aucoin's complaint, and viewing them in the light most favorable to Aucoin, the court finds that these allegations state a claim for age discrimination in violation of the United States Constitution. *See Kimel v. Florida Board of Regents,* 528 U.S. 62, 83–84, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000) (noting that states "may discriminate on the basis

13. *See, e.g., Sylvie v. City of Dallas,* No. 01–1549, 2002 WL 1155857, at *3 (N.D.Tex. May 29, 2002) (following *Southard* and allowing plaintiff to assert racial discrimination claims under Title VII and § 1983); *Davis v. Dallas Area Rapid Transit,* No. 01–2595, 2002 WL 172646, at *3 (N.D.Tex. Feb. 1, 2002) (same); *Rhyce v. Martin,* 173 F.Supp.2d 521, 530 (E.D.La.2001) ("[T]he court must choose sides, and, in this instance, selects the *South-ard* panel's holding on this issue. In other words, the Court finds that Ms. Rhyce may bring both a Title VII claim and a § 1983 claim based on the same set of facts."); *Flot v. Orleans Parish School Board,* No. 96–3661, 1998 WL 915864, at *7 (E.D.La. Dec. 29, 1998) (allowing plaintiff to assert claims under Title VII and § 1983 for sexual harassment and sex discrimination).

of age without offending the Fourteenth Amendment if the age classification in question is rationally related to a legitimate state interest," and that government action will be overturned if it is "so unrelated to the achievement of any combination of legitimate purposes" as to be "irrational"). Defendants' motions to dismiss Aucoin's age discrimination claim under § 1983 is denied.

### (3) Disability discrimination.

Defendants argue that Aucoin's disability discrimination claim under § 1983 should be dismissed because the ADA is the exclusive mechanism to assert such claims.

Section 1983 provides a remedy only for deprivations of rights, privileges, or immunities "secured by the Constitution and laws." Aucoin does not allege that defendants' alleged disability discrimination violated the Constitution. Additionally, because the court has held. that Aucoin's anxiety and stress-related condition does not constitute an ADA "disability," Aucoin identifies no federal statutory violation committed by defendants. Aucoin's claim of disability discrimination under § 1983 is dismissed.

### (4) Due process claim.

■ Defendants argue that Aucoin's claim for a violation of the due process clause of the United States Constitution should be dismissed. Aucoin's complaint is not specific regarding the nature of her due process claim. Count One of the complaint, entitled "Violation of Federal Anti-Discrimination and Other Statutes," alleges that Aucoin "had a recognized property interest in her continued state employment," and was "deprived of that right" by defendants.[14] Aside from this conclusory allegation, the complaint does not allege any facts supporting her due process claim. The complaint does not allege that Aucoin has been terminated from her job, or that she has otherwise lost her alleged property interest in her employment. Accepting as true all of the well-pleaded facts in Aucoin's complaint, and viewing them in the light most favorable to the Aucoin, the court finds that Aucoin has not stated a claim for a deprivation of due process, and accordingly defendants' motions to dismiss her due process claim under § 1983 is granted.

### (5) Punitive damages.

■ Defendants argue that, to the extent that Aucoin has asserted a claim for punitive damages against the Fire District under § 1983, any such claim should be dismissed. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) (holding that municipalities are immune from punitive damages under § 1983). Aucoin has not opposed defendants' motions, and her claim for punitive damages against the Fire District under § 1983 is dismissed.

### (6) Retaliation claims.

Defendants argue that Aucoin's retaliation claim does not implicate the equal protection clause, and arises solely under Title VII; accordingly, Aucoin has no claim for retaliation against the individual defendants (who have not been sued under Title VII). *See Gates v. City of Dallas*, No. 96–2198, 1998 WL 401602, at *5 (N.D.Tex. July 15, 1998) (holding that retaliation claim "simply does not implicate the Equal Protection Clause"). Aucoin does not oppose defendants' motions, and her claim for retaliation against Kennedy and Farris is dismissed.

---

14. Complaint at ¶ LVIII.

**(7) Claims prior to June 10, 2002.**

■ Defendants argue that because the statute of limitations for actions under § 1983 is one year, Aucoin has no claim for events occurring prior to June 10, 2002, one year before she filed suit. *See Auster Oil & Gas, Inc. v. Stream,* 835 F.2d 597, 604 (5th Cir.) ("In § 1983 cases, federal courts look to the most consonant statute of limitations of the forum state. For § 1983 cases brought in Louisiana federal courts, the appropriate statute of limitations is one year."), *cert. denied,* 488 U.S. 848, 109 S.Ct. 129, 102 L.Ed.2d 102 (1988). Aucoin does not oppose defendants' motions, and accordingly all § 1983 claims antedating June 10, 2002 are dismissed.

**2. Count Two: intentional and/or negligent misrepresentation.**

Count Two of Aucoin's complaint alleges that defendants are liable for the torts of intentional and/or negligent misrepresentation:

#### LXVII.

Plaintiff reiterates and re-avers her allegations made in articles I through LXVI. Plaintiff avers that Defendants intentionally and/or negligently misled her, by asserting that disparities in the salaries and/or benefits afforded to males in Plaintiff's same position, and disparities between salaries and/or benefits accorded younger workers and Plaintiff would be rectified. To date, these representations have never been fulfilled.

#### LXVIII.

Plaintiff further asserts that Defendants misrepresented the Fire District's sick leave policy requirements.

■ Although fraudulent misrepresentation "cannot be predicated on unfulfilled promises or statements as to future events," under Louisiana law it "may be predicated on promises made with the intention not to perform at the time the promise is made." *Sun Drilling Products Corp. v. Rayborn,* 798 So.2d 1141, 1152 (La.App. 4th Cir.2001), *writ denied,* 807 So.2d 840 (La.2002); *Polusky v. Allstate Petroleum, Inc.,* 180 So.2d 815, 817 (La. App. 4th Cir.1965). Defendants argue that this line of jurisprudence applies only to a fraud claim under Article 1953 of the Louisiana Civil Code and does not govern a claim of intentional misrepresentation. Louisiana jurisprudence views intentional misrepresentation as generally synonymous with delictual fraud or fraudulent misrepresentation, and *Polusky* and its progeny clearly address the scope of this cause of action. *See Capdeboscq v. Francis,* No. 03–0556, 2004 WL 1418391, at *1 (E.D.La. June 23, 2004) (holding that delictual fraud claim could be based on unfulfilled promise that was made with the intent not to perform, and rejecting argument that promise made with intent not to perform could only be basis of fraud claim under Article 1953); *Automatic Coin Enterprises, Inc. v. Vend–Tronics, Inc.,* 433 So.2d 766, 768 (La.App. 5th Cir.) (holding that claim for "intentional fraudulent misrepresentation(s)" could be based on breach of promise that was made with intent not to perform), *writ denied,* 440 So.2d 756 (La.1983).

■ Aucoin's intentional misrepresentation claim alleges that defendants continually promised her that she would receive the back pay she had been forced to reimburse, but that to date defendants have not given her this back pay. Aucoin argues that at the time these promises were made, defendants had no intention of carrying them out. Accepting as true all of the well-pleaded facts in Aucoin's complaint, and viewing them in the light most favorable to Aucoin, the court finds that Aucoin has stated a claim for intentional or

fraudulent misrepresentation, and defendant's motion to dismiss this claim is denied.

Additionally, defendants argue that Aucoin's negligent misrepresentation claim should be dismissed. Aucoin does not oppose defendants' motion to dismiss her negligent misrepresentation claim.[15] Accordingly, defendants' motions to dismiss Aucoin's negligent misrepresentation claim are granted.

### 3. Count Three: violations of Louisiana antidiscrimination laws.

■ Because courts have held that the scope of the Louisiana antidiscrimination law, LSA–R.S. 23:301 et seq. is the same as that of Title VII, defendants argue that any claim for punitive damages alleged by Aucoin under state antidiscrimination law should be dismissed. The court grants defendants' unopposed motion on this issue.

Defendants also argue that Aucoin's state antidiscrimination claims should be dismissed to the extent they exceed the scope of her EEOC charges. Aucoin argues only that her state claims are all supported by her EEOC charges and the scope of the EEOC's investigation. The court finds that Aucoin's state antidiscrimination law claims are limited to her allegation that she "performed work in the position of Administrative Assistant requiring equal skill, effort, and responsibility under similar working conditions, and that she was paid less than male and/or younger males in comparable positions."

### 4. Count Four: conspiracy.

Count Four of Aucoin's Complaint alleges that the Fire District, Farris, and Kennedy are solidarily liable for conspiring against her:

> Plaintiff avers that Defendants conspired to intentionally and willfully violated the Rules and Regulations of the Fire District, to discriminate against Plaintiff and to deprive her of her rights to continued state employment, to harass and threaten her, to misrepresent things to her and to inflict emotional distress.[16]

Aucoin alleges that Farris is a commissioner appointed to the Fire District who was elected "to the position of Chairman of the Fire Board by vote of the other Commissioners."[17] She further alleges that Kennedy was a "fire chief of the St. Tammany Parish Fire Protection District No. 1 who was the fire chief throughout the period of time in question pertinent to this litigation and at all times pertinent hereto he was acting in the course and scope of his employment."[18] Defendants argue that because Kennedy and Farris are both agents of the Fire District, the three defendants cannot combine to form a conspiracy under either federal or state law.

■ 42 U.S.C. § 1985(3) provides a cause of action to a person whose civil rights were injured by a conspiracy of "two or more persons." In *Hilliard v. Ferguson*, 30 F.3d 649 (5th Cir.1994), the court noted that "It is a long-standing rule in this circuit that a 'corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts

---

**15.** Aucoin's opposition focuses solely on her claim of intentional misrepresentation.

**16.** Complaint at ¶ LXX. Aucoin's Complaint does not indicate whether this claim is based

on state law or the federal civil rights conspiracy provision, 42 U.S.C. § 1985(3).

**17.** Complaint at ¶ I., subparagraph 2.

**18.** Complaint at ¶ I., subparagraph 3.

of the corporation.'" *Id.* at 653; *see also Lovoi v. Alitalia Airlines, Inc.,* No. 00–597, 2001 WL 1287113, at *4 (E.D.La. Oct. 23, 2001) ("Under the 'intra-corporate' conspiracy doctrine ... a single entity's agents cannot form a civil conspiracy for purposes of § 1985(3)."). The *Hilliard* plaintiff alleged that the Orleans Parish School Board conspired with its Superintendent to deprive him of his civil rights. The Fifth Circuit disagreed, holding that "as all were members of the same collective entity, the conspiracy did not involve two or more people." *Id.* Accordingly, the court finds that the Fire District, Kennedy, and Farris may not conspire with each other under the intra-corporate conspiracy doctrine, and Aucoin's conspiracy claim under § 1985(3) is dismissed.

■ Defendants argue that Aucoin's state law conspiracy claim should also be dismissed under the intra-corporate conspiracy doctrine. Article 2324 of the Louisiana Civil Code provides that "[h]e who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act." In *Rhyce v. Martin,* 173 F.Supp.2d 521 (E.D.La.2001), which involved similar conspiracy allegations against the Fire District and its employees, the court noted that it was "unable to determine whether Louisiana has adopted" the single entity doctrine, and refused to grant defendants' motion to dismiss. *Id.* at 536 n. 9; *cf. Dussouy v. Gulf Coast Investment Corp.,* 660 F.2d 594, 604 (5th Cir.1981) (noting that Louisiana courts have rejected the rule that a corporation cannot conspire with its individual members, shareholders, and managers under its antitrust laws). Accordingly, defen-

dants' motions to dismiss Aucoin's conspiracy claim under Article 2324 is denied.

**5. Count Five: invasion of privacy.**[19]

Count Five of Aucoin's Complaint alleges that defendants invaded her right to privacy. Aucoin alleges that defendants, along with the district attorney of St. Tammany Parish, filed suit against her in state court for "causing the unauthorized expenditure of public funds from the Fire Protection District No. 1 in the amount of $146,055.07."[20] Before Aucoin was served with this suit, "[t]he Petition was ... leaked to the press," and Aucoin alleges that she "learned she had been sued from news reports concerning the litigation."[21] Based on these facts, Aucoin alleges that defendants invaded her privacy:

> Plaintiff avers that Defendants' attempts to defame her by accusing her of criminal activity in the public sector, including in pleadings which are public records that were subsequently leaked almost immediately to the press, constitutes defamation and invasion of Plaintiff's privacy.[22]

■ In *Jaubert v. Crowley Post–Signal, Inc.,* 375 So.2d 1386 (La.1979), the Supreme Court of Louisiana noted that the right to privacy "embraces four different interests:" (1) appropriation of an individual's name or likeness, (2) unreasonable intrusion on an individual's physical solitude or seclusion, (3) publicity which places an individual in a false light, and (4) unreasonable public disclosure of embarrassing private facts. *Id.* at 1388. The court further explained:

> In Louisiana jurisprudence, the right to privacy has been variously defined as

19. Count Five of Aucoin's complaint alleges both defamation and invasion of privacy claims, and defendants have not moved to dismiss Aucoin's defamation claim.

20. Complaint at ¶ LII.

21. Complaint at ¶ LIII.

22. Complaint at ¶ LXXII.

'the right to be let alone' and 'the right to an inviolate personality.' Where an individual has such a right, in the form of one of the interests outlined above, other members of society have a corresponding duty not to violate that right. A violation constitutes a breach of duty, or fault, and may be actionable under C.C. 2315, which provides that "every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." Where no such right to privacy exists, however, a person's conduct may be the cause of another person's embarrassment, discomfiture, or monetary loss, but it will not constitute a "legal cause," because no duty has been breached.

Even where the right to privacy is found to exist, Louisiana courts have distinguished between invasions of that right which are actionable and those which are not. An actionable invasion of privacy occurs only when the defendant's conduct is unreasonable and seriously interferes with the plaintiff's privacy interest. For an invasion to be actionable, it is not necessary that there be malicious intent on the part of the defendant. The reasonableness of the defendant's conduct is determined by balancing the conflicting interests at stake; the plaintiff's interest in protecting his privacy from serious invasions, and the defendant's interest tin pursuing his course of conduct.

*Id.* at 1388–89 (citations omitted).

Aucoin does not explicitly allege which of the four components of the right to privacy provides the basis for her claim. Aucoin's opposition memorandum argues that it is defendants' "purposeful leak [of the suit against her] to the press before Plaintiff even knew she had been sued" that is actionable,[23] implying that her claim is based on defendants' unreasonable pub-

lic disclosure of embarrassing private facts. This component of the right to privacy was also at issue in *Jaubert.* The *Jaubert* plaintiffs sued their city newspaper, which had published a photograph of their home with a caption calling it "a bit weatherworn and unkempt." The Supreme Court of Louisiana held that because the home "was plainly visible from the public street," plaintiffs "had no right to privacy, regarding the house and its condition." *Id.* at 1391.

In this case, taking the allegations of Aucoin's complaint as true, the only conduct by defendants that Aucoin alleges constituted an invasion of her right to privacy was the leak to the press of the existence of the lawsuit filed against her. There is no allegation that the suit against Aucoin was sealed, or was anything other than a public record, accessible to anyone who wished to view it. Aucoin had no privacy right regarding that suit. Additionally, the principal case cited by Aucoin, *Landrum v. Board of Commissioners of the Orleans Levee District,* 685 So.2d 382 (La.App. 4th Cir.1996), provides no support to her claim. The *Landrum* plaintiff was a Levee Board police officer who was suspended after a positive drug test. Landrum alleged that the Levee Board then disclosed the results of the drug test, which was purportedly inaccurate, to the media. The court found that Landrum had stated a claim for invasion of privacy because the Levee Board allegedly allowed "highly personal and embarrassing information to go beyond those with a legitimate need to know and into the public domain." *Id.* at 392. By contrast, the suit against Aucoin was already in the public domain when the alleged leaks occurred, and Aucoin had no right of privacy regarding the existence of the suit. Accordingly,

**23.** Document 23 at p. 25.

defendants' motions to dismiss Aucoin's invasion of privacy claim are granted.